THOMAS D. WARREN

*v.*

FLORA E. VAN BRUNT, *et al.*

Prior to, and at the date of the passage of an act of Congress, entitled "An act to extend the right of pre-emption over unsurveyed lands in Minnesota, and for other purposes," approved August 4, 1854, Warren and Van Brunt with their families were residing upon the quarter quarter section of land now in contest, in the Territory of Minnesota. Shortly after, Warren having erected a dwelling house upon an adjoining forty, moved into it and continued to reside there until his pre-emption entry was made. Van Brunt and his family continued to reside upon the contested forty until his death, and his family continued to reside there after his death until the pre-emption entry by his widow, who was his administratrix. The Land Department of the General Government, upon a contest, awarded the disputed forty to the administratrix. There being no fraud or surprise, *Held:* that the forty was properly awarded to the administratrix, and that she took it subject to no equity in favor of Warren.

This action was brought in the district court for Blue Earth County, against the representatives of George M. Van Brunt, deceased. The relief sought was that the defendants be required to convey to plaintiff a certain forty acre tract of land according to legal subdivisions, to which he claimed defendants held the legal title in trust for his use and benefit.

The plaintiff and said Van Brunt entered upon the forty acres in dispute in June, 1853, before the government survey, and made a joint claim of about 280 acres, built a log house, and made other improvements on said forty acre tract jointly. In July, 1853, they divided their claim, and entered into a

written agreement in relation thereto, fixing a dividing line &c., which line ran through the 40 acres in dispute. The house was upon that portion which in the division, fell to plaintiff, and the improved land was divided between them. By the agreement Van Brunt was to occupy the house until May, 1854, when plaintiff was to have the house upon paying Van Brunt one half of $216, the money expended on the house. Plaintiff after making this agreement resided in Mankato, off from both claims, until the succeeding fall, when he moved into a house which he had built on the 40 next east of the one in dispute, and included in his claim. In May, 1854, plaintiff, having paid Van Brunt for his share of the house under the agreement, ejected Van Brunt therefrom, by legal proceedings, and immediately moved into it himself. Van Brunt then moved into a shanty on another 40 in his claim, and in from two to four weeks, erected a house on the disputed 40, within the line of his claim, as settled by said agreement, and moved into it, and lived there with his family until he died in January, 1856, making valuable improvements on the disputed 40, and his family have resided there ever since. After ejecting Van Brunt from the house first erected on the disputed 40, plaintiff lived there until the fall of 1854, when he moved back into the house previously occupied by him, on the adjoining 40, still occupying that part of the 40 in dispute his side of the agreed line of division. The government survey was completed in the spring of 1855. Both the plaintiff and Van Brunt filed in the proper land office their declaratory statement, claiming the right to enter and purchase said forty acres. Van Brunt dying, his widow and administratrix prosecuted his claim. The officers of the local land office could not agree, and the case was transmitted to the commissioner of the General Land Office, who decided in favor of the Van Brunt claim, and the Secretary of the Inte-

rior on an appeal taken by the plaintiff, affirmed this decision. The complaint charges that these decisions were obtained by fraud and corruption. The cause was tried before the court without a jury. The court found the facts substantially as above detailed, and decided that the allegations of fraud and corruption were not true ; that the legal title to said 40 was properly awarded to Van Brunt's representatives, and the patent was properly issued to them, subject however, to a trust in favor of plaintiff, and that the plaintiff was entitled to a conveyance of all that part of the disputed forty lying within the lines of his original claim, as settled by him and Van Brunt in their agreement, and judgment was entered in accordance with such decision. No case was made or settled. Both parties appeal from the judgment to this court.

Allis & Williams, and Finch and Pitcher, for Plaintiff.

F. H. Waite, and Willard and Barney, for Defendants.

*By the Court*—Berry, J.   Both the letter and the spirit of the pre-emption laws of the United States applicable to this case, (*see act Sept. 4th,* 1841,) and especially the oath prescribed to be taken by the settler, require that a pre-emption entry shall be made for the *exclusive* benefit of the pre-emptor. This being so, no agreement entered into between Van Brunt and Warren prior to entry, whereby any part of the land to be pre-empted by either, was to be shared with the other, could be enforced. As the pre-emption law does not permit a quarter quarter section to be subdivided for the purposes of settlement or entry, or in other words, as but one settler is recognized as having any pre-emption right to a given quarter quarter section, the forty acre tract in controversy in this action must have been subject to pre-emption by *one* of the par-

ties (Van Brunt or Warren) or by neither. It could not be subject to pre-emption by both jointly as a whole, or severally in distinct parts. *See sec.* 11 *act Cong. Sept.* 4, 1841 ; *act Cong. Aug.* 4, 1854. No misconstruction of the pre-emption law, no difficulty nor impossibility of ascertaining the lines of the tract, no ignorance as to the lines of any adjoining or neighboring tract intended to be claimed and pre-empted by either of the parties, no hardship arising from the circumstances of a particular case, no agreement express or implied, no acts nor conduct of the parties to the contrary, would affect these propositions. Whoever was entitled to the legal title of the forty in this case, was entitled to the whole forty absolutely, and in his own exclusive right, and it would be simply impossible under existing laws, that such title should be subject to any equities, in the enforcement of which any portion of the forty in question must be awarded to another party. The Court below finds conclusions of law to the effect that the legal title to the disputed forty, and the patent therefor, were properly awarded to the heirs of Van Brunt, but that they took and held such title to a portion of the forty subject to the use and benefit of Warren, in whom is the equitable title to such portion, and for which he is entitled to a conveyance. From the foregoing considerations it follows, that these conclusions of law cannot be sustained; neither can the judgment by which such conclusions are sought to be carried into effect. The result of the judgment, if executed, would be to divide the contested forty between Warren and the representatives in interest of Van Brunt. All parties are dissatisfied, and by appeal and cross appeal the action comes to this Court. As there is no case made, we had only in the first place to inquire, whether the conclusions of law upon which the judgment rests, are supported by the facts found; having determined that the conclusions of law are not thus supported, we

have in the second place to inquire, what judgment should be rendered upon the facts found. The complaint charges that the pre-emption entry made by the representatives of Van Brunt, who had deceased, was obtained by fraud and corruption. This charge is found by the Court below to be untrue. It is admitted in the pleadings that upon a notice given by Warren, a contest as to the right to the disputed forty was had before the local land office, and that upon a disagreement between the register and receiver, the case was transmitted to the Commissioner of the General Land Office, who decided adversely to Warren, and in favor of Van Brunt's representatives, and that upon an appeal by Warren to the Secretary of the Interior, the decision of the Commissioner was affirmed. There was then no fraud nor surprise, and the officers through and by whom the decision of the controversy was made, had under the pre-emption law jurisdiction of cases of this character, and the parties interested submitted themselves to such jurisdiction by appearance. By section 11 of the act of Sept. 4, 1841, before referred to, and entitled "An Act to appropriate the proceeds of the sales of public lands and to grant pre-emption rights," it is provided "that when two or more persons shall have settled on the same quarter section of land, the right of pre-emption shall be in him or her who made the first settlement, provided such persons shall conform to the other provisions of this act: and all questions as to the right of pre-emption arising between different settlers, shall be settled by the register and receiver of the district within which the land is situated, subject to an appeal to and a revision by the Secretary of the Treasury of the United States." By sec. 3, act March 3, 1849, the function of revision appears to have been transferred to the Secretary of the Interior. Prior to the passage of an act of Congress entitled "An Act to extend the right of pre-emption over unsurveyed lands in

Minnesota and for other purposes," approved August 4, 1854, the pre-emption law of 1841 applied in Minnesota only to lands which had been surveyed. By the act of August 4, its provisions are extended to "the land in Minnesota Territory whether surveyed or not." Up to the 4th day of August, 1854, neither Van Brunt nor Warren possessed any rights recognized by the United States to the land in question. Both were mere "squatters." The land at that time had not been surveyed. On said 4th day of August both Van Brunt and Warren with their families were residing upon the disputed forty. The right of both began on that day, and whatever took place prior to that date is immaterial. Sometime in the fall succeeding, Warren having erected a dwelling house upon an adjoining forty, moved into it, and continued to reside therein until his pre-emption entry was made. Van Brunt continued to reside upon the disputed forty until his death, and his family continued to reside thereupon after his death, until the date of the pre-emption entry made by his widow and administratrix. The act of August 4, 1854, contained the following proviso, "Provided however, that if when said lands are surveyed it is found that two or more persons are settled upon the same quarter section, each shall be permitted to enter his improvement as near as may be by legal subdivisions." "By legal subdivisions," that is to say in this case, by *forties*. No survey having been made so that persons making pre-emption settlements could ascertain upon what precise government subdivision they would be found to have located, and it being deemed advisable to provide for some fair adjustment of conflicting claims, the proviso above cited was intended to meet the case. And all parties who made pre-emption settlements upon unsurveyed lands in Minnesota, made the same subject to this proviso, and therefore subject to the risk of losing a part of the land claimed by them, if it

should turn out upon a survey that such claim conflicted with that of a neighboring settler.

Under this state of the facts and the law, it was for the land department of the general government, subject to the revisory power of the Secretary of the Interior, to determine the rights of the contesting parties, not according to any notions of squatter justice, but according to law, and in so doing they allow Van Brunt's administratrix to enter the land where he and his family actually resided, and where he appears to have made improvements to a considerable amount, and they permit Warren to enter the land upon which *his* dwelling was situate, where he and his family resided. This was a fair adjustment of the controversy under the law, and was in accordance with both the spirit and letter of the proviso of the act of August 4th, by which each party in case of a conflict of this nature was to " be permitted to enter his improvement *as near as may be* by legal sub-divisions." Both parties could not have the forty. Which should have it was the question to be decided. The very language of the proviso " *as near as may be* by legal sub-divisions" implies that cases would occur in which it would be neither practicable nor possible for each to enter the *whole* of his improvements by legal sub-divisions, and in such cases the exercise of a sound discretion was called for in the adjustment of the matter in difference with as much regard to the right of *each* to his improvement as the nature of the case would permit, *provided* always that the entry must be by legal sub-divisions. We think the discretion was equitably exercised in this case, and the forty properly awarded to the administratrix of Van Brunt, and as before stated, that Warren had no right in law or equity to any portion of the disputed forty acre tract. Speaking for myself alone, it is perhaps proper for me to say that while I have examined the *facts* of the case, I can see no

very good reason why the action of the land department should not be held conclusive. Here, that department had jurisdiction; there was no fraud, there was no surprise; the proceedings were not *ex parte*, and there was a continued contest before the local land officers, the commissioner, and the Secretary of the Interior. It is possible there may be something in the point made by the learned counsel for Warren, that the action of the land department cannot be final and conclusive, because that is not a tribunal which is or can be invested with judicial powers. At any rate, while it seems to have been held in some cases by the Supreme Court of the United States, that under circumstances analogous to those of the case at bar, the determination of the land officers would be final as in *Lytle vs. State of Arkansas*, 9 *How.* 333 ; (see however the comments of Justice Catron on this case, in *Barnard's heirs vs. Ashley's heirs*, 18 *How.*, 45,) and by implication *in Garland vs. Wynn*, 20 *How.* 8, as well as in *Lyndsay vs. Hawes*, 2 *Black.* 54, it is said by *Justice Nelson in State of Minnesota vs. Batchelor*, 1 *Wall*, 115, that " a court of equity will look into the proceedings before the register and receiver, and even into those of the land office or other offices, where the right of property of the party is involved, and correct errors of law or of fact, to his prejudice. The proceedings are *ex parte* and summary before these officers, and no notice is contemplated or provided for by the pre-emption laws as to parties holding adverse interests, nor do they contemplate a litigation of a right between the applicant for a pre-emption claim with a third party. The question as contemplated is between the settler and the government, and if a compliance with the conditions is shown to the satisfaction of the officers, the patent certificate is granted." It will be seen that these views of the Supreme Court as announced by Justice Nelson, do not confine the

right of re-investigation by a court of equity to cases where fraud has been committed, and the land officers imposed upon by false testimony, or otherwise, or to cases where there has been no contest. Under this state of things, I have thought best as before remarked, to examine the facts in the case at bar, the result of such examination being the same as if the determination of the land department had been held conclusive. The judgment below must be reversed, and judgment be entered dismissing the suit as to all the defendants.