STATE v. DONALD DIETZ.
STATE v. JOHN A. KOTEK.

119 N. W. (2d) 833.

February 15, 1963—Nos. 38,754, 38,755.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, and *Herbert J. Cook,* County Attorney, for the state.
*Robert C. Kucera,* for defendant Dietz.
*Lucius A. Smith,* for defendant Kotek.

KNUTSON, CHIEF JUSTICE.

The two cases above are here by virtue of certification by the trial court under Minn. St. 632.10 of questions raised by defendants' demurrers to informations charging them with commission of felonies.

Each defendant was charged separately by information with having committed the crime of grand larceny in the second degree. The informations are identical and charge that on August 16, 1961, the defendant—

"* * * did wrongfully, unlawfully, and feloniously, and in the night-time of said day, take, steal and carry away from and out of a 1952 Ford one transmission, said personal property and all thereof being then and there the personal property of one Leo Brown and of a value of less than $25.00; * * * contrary to the form of the statute in such case made and provided, the same being Section 622.06(4), M. S. A., said acts constituting Grand Larceny, 2nd Degree * * *."

It is the claim of both defendants that § 622.06, defining grand larceny in the second degree, is unconstitutional, being in contravention of Minn. Const. art. 1, § 5, or U. S. Const. Amends. V or XIV, § 1.

Prior to the enactment of L. 1951, c. 472, Minn. St. 622.06 read as follows:

"Every person who, under circumstances not amounting to grand larceny in the first degree, in any manner specified in this chapter, shall steal or unlawfully obtain or appropriate:

"(1) Property of the value of more than $25 but not exceeding $500 in any manner whatever;

"(2) Property of any value by taking the same from the person of another;

"(3) Property of any value, by taking the same in the daytime from any dwelling house, office, bank, shop, warehouse, vessel, or railway car, or any building whatever;

"(4) Property of less value than $25, by taking the same in the night-time from any dwelling house, office, bank, shop, warehouse, vessel, or railway car, or any building whatever; or

"(5) A record of a court or officer, or a writing, instrument, or record kept, filed, or deposited according to law with or in keeping of any public officer or officers—

"Shall be guilty of grand larceny in the second degree, and punished by imprisonment in the state prison for not more than five years, or by imprisonment in the county jail for not exceeding one year or by fine of not more than $500."

L. 1951, c. 472, made a slight amendment in § 622.06(3, 4) by adding "motor vehicle" to the other designated places formerly named in the statute. Thereafter paragraphs (3) and (4) read:

"(3) Property of any value, by taking the same in the daytime from any dwelling house, office, bank, shop, warehouse, vessel, *motor vehicle,* or railway car, or any building whatever;

"(4) Property of less value than $25, by taking the same in the night-time from any dwelling house, office, bank, shop, warehouse, vessel, *motor vehicle,* or railway car, or any building whatever."

The 1951 amendment made no other changes in the statute.

L. 1955, c. 101, again amended the section, mainly by changing the value in paragraph (1) from $25 to $100. After this amendment, the section, as it has since remained, read as follows:

"Every person who, under circumstances not amounting to grand larceny in the first degree, in any manner specified in this chapter, *steals* or unlawfully *obtains or appropriates*:

"(1) Property of the value of more than *$100* but not exceeding $500 in any manner;

"(2) Property of any value by taking *it* from the person of another;

"(3) Property of any value by taking *it* in the daytime from any

dwelling house, office, bank, shop, warehouse, vessel, motor vehicle, railway car, or building;

"(4) Property of less value than $25 by taking *it* in the nighttime from any dwelling house, office, bank, shop, warehouse, vessel, motor vehicle, railway car, or building; or

"(5) A record of a court or officer or a writing, instrument, or record kept, filed,. or deposited according to law with or in keeping of any public officer

"*Is* guilty of grand larceny in the second degree and *may be* punished by imprisonment in the state prison for not more than five years, by imprisonment in the county jail for not *more than* one year, or by *a* fine of not more than $500."

By increasing the value of the property in paragraph (1) in the 1955 amendment from $25 to $100, without making a corresponding change in paragraph (4), a rather anomalous result followed. Thus, under the law as so amended and under the present law, a person who steals property worth from $100 to $500 in any manner; steals property of any value from an automobile in the daytime; or property of value less than $25 from an automobile in the nighttime is guilty of grand larceny in the second degree, but if he steals property worth between $25 and $100 from an automobile in the nighttime he is guilty of only petit larceny.[1] It is quite obvious that this result must have been due to legislative inadvertence, as we could hardly ascribe to the legislature the intention to create such an absurd result.

Defendants base their claim of unconstitutionality mainly on three grounds: (1) That they are subjected to cruel and unusual punishment contrary to Minn. Const. art. 1, § 5; (2) that they are deprived of life, liberty, and property without due process of law, contrary to U. S. Const. Amends. V and XIV; and (3) that the statute is so

---

[1]Petit larceny is defined by § 622.07 as follows: "Every larceny, except in the first and second degrees as described in this chapter, shall be petit larceny, and punished by imprisonment in the county jail for not more than three months or by a fine of not more than $100."

uncertain of meaning that it could not be reasonably understood by a person of ordinary intelligence.

1. Minn. Const. art. 1, § 5, reads:

"Excessive bail shall not be required, nor shall excessive fines be imposed; nor shall cruel or unusual punishments be inflicted."

In State v. Moilen, 140 Minn. 112, 115, 167 N. W. 345, 346, 1 A. L. R. 331, 333, in discussing this constitutional provision, we said:

"It is the exclusive province of the legislature to declare what acts, deemed by the lawmakers inimical to the public welfare, shall constitute a crime, to prohibit the same and impose appropriate penalties for a violation thereof. With the wisdom and propriety thereof the courts are not concerned. [Authorities cited.] Judicial consideration of enactments of the kind is limited to the inquiry whether the constitutional rights of the citizen have been invaded or violated. If such rights be in no wise infringed or abridged the statute must stand, however harsh it may seem to those who run counter to its commands. * * *

\* \* \* \* \*

"The contention that the penalty fixed by the statute violates the provisions of the Constitution against excessive fines and cruel and unusual punishments for crime is not sustained. The nature, character and extent of such punishments are matters almost wholly legislative. The legislature may prescribe definite terms of imprisonment, a specified amount as a fine, or fix the maximum and minimum limits of either, which the courts are bound to respect and follow. In fact the court has jurisdiction to interfere with legislation upon this subject only when there has been a clear departure from the fundamental law and the spirit and purpose thereof and a punishment imposed which is manifestly in excess of constitutional limitations. [Authorities cited.] The term cruel and unusual punishment, as used in the Constitution, has no special reference to the duration of the term of imprisonment for a particular crime, though it would operate to nullify the imposition by legislation of a term flagrantly in excess of what justice and common humanity would approve. The purpose of incorporating

that particular provision in the Constitution was to prevent those punishments which in former times were deemed appropriate without regard to the character or circumstances of the crime, but which later standards in such matters condemned as unjust and inhuman; such punishments as burning at the stake, the pillory, stocks, dismemberment and other extremely harsh and merciless methods of compelling the victim to atone for and expiate his crime. The intention was to guard against a return to such inhuman methods."[2]

It is perfectly obvious that prior to the 1955 amendment the punishment provided by § 622.06 for stealing property worth less than $25 from an automobile in the nighttime would not have violated any constitutional proscription against cruel and unusual punishment.[3] If the penalty did not violate this constitutional provision prior to the amendment, it is difficult to see how it became cruel and unusual by virtue of the amendment. The punishment was the same then as it is now. The trouble here is not that the penalty is too severe for the crime of which defendants are charged but, rather, that it is not severe enough for a crime of a higher degree of which defendants have not been charged. Defendants are in no position to complain of something that does not affect them.

In Mesaba Loan Co. v. Sher, 203 Minn. 589, 595, 282 N. W. 823, 827, we said:

"A party attacking the constitutionality of a statute must show that it affects his rights in an unconstitutional manner. That it so affects the rights of others is no concern of his. He may champion his own, but not the rights of others. * * * Defendants cannot assert the unconstitutionality of the exclusion of banks, trust companies, building and

---

[2]See, also, State v. Borgstrom, 69 Minn. 508, 72 N. W. 799, 975, and State v. Ives, 210 Minn. 141, 297 N. W. 563.

[3]See State v. Tremont, 196 Minn. 36, 263 N. W. 906, holding that the punishment provided by this section did not violate the constitutional proscription against cruel and unusual punishment for stealing two sets of curtains from a department store.

loan associations, and loans on real estate, because they do not belong to any of the excluded classes and are not prejudiced by the exclusions."[4]

As a matter of fact, the inadvertent creation of a lesser penalty for stealing property of a greater value than that which defendants have been charged with stealing may work to their advantage in that, if they are able to prove that the property stolen was worth more than $25 and less than $100, the most they could be convicted of would be petit larceny. We therefore answer the first question in the negative that the statute does not prescribe a cruel and unusual punishment in contravention of Minn. Const. art. 1, § 5.

Defendants rely heavily on Cannon v. Gladden, 203 Ore. 629, 281 P. (2d) 233. That case involved a habeas corpus proceeding. The Oregon bill of rights (art. 1, § 16) provided: "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." Their statute provided that one found guilty of either statutory or forcible rape should be sentenced to the penitentiary for not more than 20 years. However, the crime of assault with intent to commit rape permitted an imprisonment for life in the penitentiary or for a period of not more than 20 years. It was argued that, inasmuch as the penalty for the lesser offense was greater than for the more grave offense, the statute violated the Oregon constitution. The court held that the life imprisonment portion of the statute did violate the Oregon constitution, but it seems clear that it based its decision on the part of its bill of rights which provided that penalties shall be proportioned to the offense. We have no such provision in our constitution. The Oregon decision is based on the following language (203 Ore. 632, 281 P. [2d] 235):

"The question presented is whether the penalty of life imprisonment for an assault with intent to commit rape under the circumstances of this case is proportioned to the offense, or is it so disproportioned to the offense as to shock the moral sense of all reasonable men as to what is right and proper? The question answers itself.

"How can it be said that life imprisonment for an assault with

---

[4]See, also, Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336.

intent to commit rape is proportioned to the offense when the greater crime of rape authorizes a sentence of not more than 20 years? It is unthinkable, and shocking to the moral sense of all reasonable men as to what is right and proper, that in this enlightened age jurisprudence would countenance a situation where an offender, either on a plea or verdict of guilty to the charge of rape, could be sentenced to the penitentiary for a period of not more than 20 years, whereas if he were found guilty of the lesser offense of assault with intent to commit rape he could spend the rest of his days in the bastile."

In the Oregon case the penalties are of such a severe nature that even under our constitution it might be that the same result would be reached; but in view of the history of our statute, the fact that penalty for the crime of which defendants are now charged has been the same before and after the amendment in 1955, and the fact that the penalty itself certainly does not shock the senses as being cruel and unusual, we cannot see that it violates our constitutional provision.

2. The next question is: Does § 622.06 deny defendants equal protection of the laws? It is clear that the legislature may classify crimes and prescribe the punishment therefor based on the value of property stolen.[5] In 16A C. J. S., Constitutional Law, § 564, the rule is stated as follows:

"Equal protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime, unless it prescribes different punishments for the same acts committed under the same circumstances by persons in like situation."

In State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753, we exhaustively examined this and other related questions. Here there is no denial of equal protection of the laws for the reason that all in the same class, as are defendants, are treated alike. In other words, all who steal property worth less than $25 from an automobile in the nighttime are subject to the same penalty. The mere fact that those who steal property of a greater value under like circum-

---

[5]See, 12 Am. Jur., Constitutional Law, § 490.

stances may be subject to a lesser penalty does not affect defendants. This question, too, must be answered in the negative.

3. Finally, defendants contend that they are deprived of life, liberty, and property without due process of law. Their argument in this respect is difficult to follow, but it is apparently based on the claim that the statute is so uncertain of meaning that it cannot be understood by a person of ordinary intelligence. Here, again, the questions involved have been thoroughly discussed in State v. Northwest Poultry & Egg Co. *supra,* and we see no need for reiterating what was said there. There is no difficulty in understanding the statute. It is not clarity of expression that is lacking but a failure on the part of the legislature to make a change in both parts of the statute when it was amended in 1955. While those in two different classes may be subject to different penalties, there is no difficulty in determining what class of wrongdoer belongs in each class and what the penalty will be for a transgression of the law under the provision under which he falls. It may be that, as defendants urge, a person of ordinary intelligence would be persuaded to steal property worth more than $25 but less than $100 rather than property of a lesser value because of the fact that he would be subject to a lesser penalty for stealing property of a greater value, but that is a matter which should be corrected by the legislature. The fact that it might be favorable to someone who committed a different crime does not affect the clarity of the law as far as defendants are concerned.

In closing, it should be said that the statute should by all means be amended by the legislature. As a matter of fact, we see no necessity for both paragraphs (3) and (4) at all. If stealing property of any value in the daytime from the designated places constitutes grand larceny in the second degree, stealing property from the same places during the nighttime obviously should be a crime of equal gravity. All the statute would have to say is that stealing property of any value from any of the designated places at any time constitutes grand larceny in the second degree.

Questions answered in the negative.