# IN RE MRS. OWEN JENISON CONTEMPT PROCEEDINGS.*

120 N. W. (2d) 515.

March 8, 1963—No. 38,940.

*John S. Connolly, Louis W. Claeson, Jr.,* and *Otis H. Godfrey, Sr.,* for relator.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondents.

OTIS, JUSTICE.

This matter is before the court on a writ of certiorari to review

---

*On October 14, 1963, the United States Supreme Court filed the following Per Curiam opinion: "The petition for a writ of certiorari is granted. The judgment is vacated and the case is remanded to the Supreme Court of Minnesota for further consideration in light of Sherbert v. Verner, 374 U. S. 398."

a conviction for contempt arising out of the refusal of relator, Laverna H. Jenison, to act as a petit juror for the assigned reason that such service is in conflict with her religious principles.

It appears that Mrs. Jenison was called for jury duty at the general term of the Renville County District Court on November 13, 1962, and was selected to sit on a civil case. When the clerk was about to administer the oath, the following colloquy occurred:

"Mrs. Jenison: (Standing) Sir, I cannot serve on this jury. I cannot judge.

"The Court: The Court has told you that you must serve, and you will remain where you are and serve as a juror in this case.

"Mrs. Jenison: Well, I'll pronounce no judgment. I can't. It's against my Bible teaching. My Bible tells me 'Judge not, so you will not be judged.'

"The Court: In view of your statements the Court holds you in contempt of Court. You will stay in the courtroom and the Court will deal with you summarily during recess time."

A further interrogation of Mrs. Jenison disclosed that she had acted as a juror in the May term of court in 1948 but had subsequently experienced a change in her religious beliefs which prevented her from again serving. In adjudicating the relator guilty and imposing sentence, the court stated:

"Now, the Court has told you that the Court cannot excuse you. The law makes no provision for such an excuse, and the Court will ask you now once more whether you will now perform jury duty when called upon," to which she answered, "I cannot."

Thereupon the court, in the following language, adjudged Mrs. Jenison to be in contempt of court:

"The Court finds and determines that Mrs. Owen Jenison is guilty of contempt of Court in refusing to serve as a juror and you may now step in front of the Clerk's desk and the Court will impose sentence.

"It is considered and adjudged that as punishment for contempt of Court you be sentenced to the County Jail of Renville County for a period of thirty days.

"It is further ordered that you may purge yourself of contempt at any

time during said period if you will indicate to the Sheriff that you wish to be relieved and are willing to do your civic duty."

After remaining in custody for 7 days, Mrs. Jenison was released pending a review of her conviction by this court.

There are three assignments of error: (1) That the conviction is in violation of Minn. Const. art. 1, § 16, and U. S. Const. Amend. I; (2) that relator was entitled to be excused under Minn. St. 628.49 governing women jurors; and (3) that the sentence was excessive.

■ Relator contends that the action of the trial court denied her rights which are secured by Minn. Const. art. 1, § 16, the applicable portions of which are as follows:

"* * * The right of every man to worship God according to the dictates of his own conscience shall never be infringed, * * *; nor shall any control of or interference with the rights of conscience be permitted, * * *; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of the State, * * *."

In addition it is claimed that the court's action contravened the provisions of U. S. Const. Amend. I, prohibiting any "law respecting an establishment of religion, or prohibiting the free exercise thereof," which by the Fourteenth Amendment has been made applicable to the states.[1] We are of the opinion that the duty imposed on every citizen who is otherwise qualified to serve on a petit jury does not prohibit the free exercise of religion or interfere with the right to worship God according to conscience, and that refusal to serve is inconsistent with the peace and safety of the state.

The constitutional guaranty that every citizen may affiliate with whatever religious group teaches and practices doctrines which are consistent with his individual convictions, and that he may be governed by the dictates of his own conscience, is not an absolute, unfettered privilege. In striking down the contention that Federal laws prohibiting polygamy are in violation of the First Amendment, the

---

[1]Cantwell v. Connecticut, 310 U. S. 296, 303, 60 S. Ct. 900, 903, 84 L. ed. 1213, 1218.

United States Supreme Court has held that while Congress is deprived of legislative power over mere opinion, it is left free to reach actions which are in violation of social duties or are subversive of good order. Reynolds v. United States, 98 U. S. 145, 164, 25 L. ed. 244, 249. The Supreme Court there held that to excuse prohibited practices because of religious belief would in effect permit every citizen to become a law unto himself. In a subsequent prosecution, also hinging on the practice of polygamy, the court stated (Davis v. Beason, 133 U. S. 333, 342, 10 S. Ct. 299, 300, 33 L. ed. 637, 640):

"* * * It was never intended or supposed that the amendment could be invoked as a protection against legislation for the punishment of acts inimical to the peace, good order and morals of society."

Under the First Amendment not even so serious a matter of personal conscience as bearing arms in time of war may be avoided because of religious principles. This question was determined adversely to a conscientious objector seeking naturalization in United States v. Macintosh, 283 U. S. 605, 623, 51 S. Ct. 570, 575, 75 L. ed. 1302, 1310. There the United States Supreme Court held:

"* * * The conscientious objector is relieved from the obligation to bear arms in obedience to no constitutional provision, express or implied; but because, and only because, it has accorded with the policy of Congress thus to relieve him."[2]

Notwithstanding defendants' contention that securing medical assistance for a child was inconsistent with their religious beliefs, the Maryland Court of Appeals in passing on a conviction for manslaughter arising out of the parents' refusal to provide the child with necessary medical attention emphasized the distinction between the unqualified constitutional freedom to believe and the limited freedom to act. Craig v. State, 220 Md. 590, 599, 155 A. (2d) 684, 690.

With these principles in mind, we turn to the question of whether refusal to act as a juror, based on a literal Biblical admonition, offends the peace, safety, good order, or morals of the community. Obviously the courts must have broad latitude in summoning qualified

---

[2]See, also, Tyrrell v. United States (9 Cir.) 200 F. (2d) 8, 13.

jurors if the constitutional right to a jury trial in civil and criminal cases is to be enjoyed by litigants in our judicial system.[3] The gravity of this responsibility has been well expressed by the Arizona court in County of Maricopa v. Corp, 44 Ariz. 506, 507, 39 P. (2d) 351, 352:

"Jury service is not a matter of choice, or right, but is a duty, imposed by the state. * * * It is analogous to military duty in time of war, in that the citizen designated by the state for jury duty must, like the soldier, serve whether he likes it or not, on such terms as the state may fix."

No concept in our Anglo-Saxon tradition is more firmly entrenched or more an integral part of our democratic heritage than the right of every citizen to be tried by a jury of his peers. To sanction the disqualification of a juror because of a conviction which is at variance with such a basic institution is to invite the erosion of every other obligation a citizen owes his community and his country.

Of the two cases cited by relator for reversal, one is readily distinguishable, and the other, while squarely in point, we do not choose to follow. In Watson v. Charlton, 243 Iowa 80, 50 N. W. (2d) 605, the court reversed a conviction for contempt arising out of the attempt of a woman to avoid jury duty in a criminal case. She had been called initially on less than 4 hours' notice, and being the mother of small children who required her care, asked that she be excused from serving. In the face of the court's insistence that she remain, she adhered

---

[3]U. S. Const. Amend. VI: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury * * *."

U. S. Const. Amend. VII: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court in the United States than according to the rules of the common law."

Minn. Const. art. 1, § 4: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy, * * *."

Minn. Const. art. 1, § 6: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *."

to her position that her domestic situation made it impossible, and was thereupon sentenced to 6 months in the women's reformatory. Notwithstanding the fact that within a few hours she relented and agreed to act, the court remained adamant and committed her to custody. The Iowa Supreme Court found a technical irregularity which warranted acquittal, but held that in any event it was clear she had effectively purged herself of contempt even if she were guilty. It is significant, however, that in so holding the court gave due recognition to the imperative need for responding to a jury summons in the following language (243 Iowa 93, 50 N. W. [2d] 612):

"* * * No higher responsibility rests upon the citizen than that of taking his place on the jury panel, when called, without evasion or complaint. * * *

"Only the most compelling circumstances will direct the good citizen to ask an excuse when summoned to the jury panel; and the court should grant such a request, when made, only upon the best of grounds. Any other attitude on the part either of the juror or the court destroys the effectiveness of the jury system. * * * If at all possible, the good citizen will not only serve willingly when called, but will use his best efforts, intelligence and integrity in deciding the cases which are placed before him. Any lesser degree of understanding and performance makes a mockery of the long-established Anglo-Saxon jury system, * * *."

Although we are in complete accord with the decision in Watson v. Charlton, *supra,* we do not subscribe to the holding in United States v. Hillyard (E. D. Wash.) 52 F. Supp. 612. The court there found that a prospective juror, who refused to perform jury duty because of his religious convictions as a member of Jehovah's Witnesses, was relieved of that obligation under the terms of the First Amendment. The Federal court's opinion contains a scholarly analysis of the historical background which prompted the First Amendment, but the conclusions reached in applying the amendment do not persuade us.

It is not our function or prerogative to weigh and assess the merits of a particular religious doctrine. Nevertheless, we submit that the like-

lihood of this relator's conscience being unduly burdened by service on a jury is slight compared with the sense of guilt which might well afflict a conscientious objector who may be required to kill another human being in time of war without any constitutional right of exemption. We believe that if a citizen is to be relieved of jury duty for reasons of religion or conscience, his exemption should be extended by the legislature as in the case of the conscientious objector.

■ We find no merit in the contention of relator that she was entitled to exemption under § 628.49. That statute permits but does not require women jurors to be excused at their request. We hold that it was not an abuse of discretion to deny relator's request, and she was therefore not justified in defying the court's order directing her to continue on the panel.

■ The court's right to impose the sentence here for consideration is governed by Minn. St. c. 588. Section 588.01, subd. 2(1), defines a direct contempt as follows:

"Direct contempts are those occurring in the immediate view and presence of the court, and arise from one or more of the following acts:

"(1) Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other judicial proceedings."

Section 588.01, subd. 3, defines constructive contempts as "those not committed in the immediate presence of the court, and of which it has no personal knowledge," including, among other actions, a juror's neglect to attend or serve when summoned.[4]

If this was a constructive contempt, under these facts the maximum penalty authorized by § 588.02 was a fine of $50, whereas the punishment for a direct contempt under § 588.10 is not to exceed a fine of $250, or imprisonment up to 6 months, or both. We have in mind, however, that the court's disposition of the contempt permitted relator to purge herself of the offense at any time she elected to comply with

---

[4]See, also, Minn. St. 628.48.

the court's order.[5] We believe that relator was guilty of behaviour which constituted a direct contempt justifying the sentence imposed. We are supported in this conclusion by Powell v. State, 48 Ala. 154, 156. There a juror, who had already been selected, left the box, claiming exemption as a fireman, and was therefore guilty of contempt under a statute governing "disrespectful, contemptuous, or insolent behavior in court, tending in any wise to diminish or impair the respect due to judicial tribunals, or to interrupt the due course of the trial." The two statutes are so similar as to suggest a common origin.

■ Whether we have the power to review and revise a sentence which does not exceed the statutory maximum has not been extensively considered by this court. In discussing the nature of direct contempts warranting summary punishment on the court's own motion without a formal trial, we have indicated that the court's power is arbitrary, born of necessity, and must be exercised with great prudence.[6] However, we have stressed the rule that an order adjudging a criminal contempt ought not to be reversed unless the court acted capriciously, oppressively, or arbitrarily.[7] We believe it is significant that the power to pass sentence, which the supreme court at one time enjoyed by statute, has now been withdrawn.[8] In State v. Barrett, 40 Minn. 65, 75, 41 N. W. 459, 463, a capital case in which a sentence of execution was imposed, we stated:

"* * * The court refused to certify to the existence of exceptional circumstances in the case at bar, and this refusal is alleged as error. This is a matter which is peculiarly within the province of the court before whom the accused has been tried. No appellate court should interfere with its conclusions, unless there has been a palpable abuse of the discretion which should be exercised upon so momentous an occasion."

---

[5]See, § 588.12.

[6]State ex rel. Russell v. Ives, 60 Minn. 478, 62 N. W. 831.

[7]State v. Leftwich, 41 Minn. 42, 44, 42 N. W. 598, 599.

[8]See, State v. Bilansky, 3 Minn. 169 at 181 (246 at 261); Rev. Stat. [Terr.] 1851, c. 129, § 222, replaced by Minn. St. 632.08; see, also, State v. Herrick, 12 Minn. 75 (132).

With few exceptions the laws of the various states make no provision for appellate review of sentences imposed by trial courts. Appeals to secure relief from harsh sentences have been uniformly unsuccessful, in the absence of express statutory sanctions. In requiring a reconsideration of a state trial court's sentence based on apparent misinformation, the United States Supreme Court stated (Townsend v. Burke, 334 U. S. 736, 741, 68 S. Ct. 1252, 1255, 92 L. ed. 1690, 1693):

"We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of *habeas corpus.*"

Only where sentences result from convictions for contempt in Federal court has relief been granted after appellate review, the distinction in those cases stemming from the fact that the Federal statutes prescribe no limit on the punishment which may be imposed for contempt.[9]

In the light of our statutory history removing from the supreme court the right to revise criminal sentences on appeal, and following the great weight of authority, we hold that we may not review sentences in criminal matters where they do not exceed the limits imposed by statute.[10] Here relator had it within her power to effect her own release by expressing to the court her willingness to obey its order. The 30-day sentence merely placed a limitation on the length of time she was to be held if she did not comply, although theoretically

---

[9]Yates v. United States, 356 U. S. 363, 366, 78 S. Ct. 766, 768, 2 L. ed. (2d) 837, 840.

Recently the United States Supreme Court affirmed its position that it had no power to review discretionary sentences imposed by trial courts except in contempt matters. Gore v. United States, 357 U. S. 386, 393, 78 S. Ct. 1280, 1285, 2 L. ed. (2d) 1405, 1410.

See, also, Watkins, *Appellate Review of the Sentencing Process in Michigan,* 36 U. of Detroit L. J. 356, 369; 69 Yale L. J. 1453; 109 U. of Pa. L. Rev. 422; Annotations, 29 A. L. R. 318 and 89 A. L. R. 299.

[10]This is not to say that the validity of a given statute prescribing a particular punishment may not be challenged. State v. Dietz, 264 Minn. 551, 119 N. W. (2d) 833.

the court had the power under § 588.12 to continue her confinement indefinitely if she refused to capitulate. The judgment and sentence for contempt are affirmed.

Affirmed.