## STATE v. EDWARD ARTHUR POOLEY.

153 N. W. (2d) 143.

September 15, 1967—No. 40,384.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* for appellant.

*Douglas M. Head,* Attorney General, *David Byron,* Special Assistant Attorney General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment of conviction.

On August 16, 1965, defendant was convicted, pursuant to his guilty plea, of having, on May 6, 1965, committed an act of sodomy upon his 14-year-old stepson. On November 5, 1965, he was sentenced to not more than 5 years in the State Prison. He appeals the conviction on the grounds (1) that his guilty plea was made under a genuine misapprehension of his rights, and (2) that the trial court abused its discretion in sentencing him to prison rather than to a state hospital or to probation.

■ Defendant urges that he entered a plea of guilty only because of a misapprehension of his rights. Prior to the commission of the offense, defendant had sought help for his homosexuality problem at Ancker Hospital, but was told there was nothing wrong with him and sent home. After the commission of the offense, but before the making of the complaint herein, he made arrangements to see a private psychiatrist, whom he subsequently consulted at least six times.

Defendant claims that because of his financial condition he did not feel able to pay for the treatment he needed, and thus, about June 14, 1965, he went to the St. Paul Police Department; that upon being prom-

ised medical aid for his problem, he dictated a confession; and that he was led to understand that the prosecution for the crime was but a necessary formality, prerequisite to obtaining the treatment he needed. Defendant contends that the confession was involuntary because obtained by means of unfulfilled assurances, State v. Biron, 266 Minn. 272, 123 N. W. (2d) 392; and that the guilty plea was interposed because of his genuine misapprehension that the confession could be used against him if he stood trial. See, State v. Linehan, 276 Minn. 349, 150 N. W. (2d) 203; State v. Clifford, 267 Minn. 554, 126 N. W. (2d) 258.

Defendant's assertions as to his experience with the police department are not based directly upon the record,[1] although at the November 5, 1965, sentencing his attorney remarked:

"With the desire that he be helped and that something be done to straighten him out, Mr. Pooley and Mrs. Pooley's son went to the police and attempted to cooperate with the police. The police, of course, if— well, the police saying that they were attempting to help him and, if he was going to get help, they should clear things up now."

At the same hearing, the prosecutor declared:

"In my ten years in this business in representing the State, I have seen

---

[1] The arraignment transcript shows defendant answered the prosecutor's questions as follows:

"Q.  Your attorney, Mr. Sullivan, is in court with you today?
"A.  Yes, sir.
"Q.  And I take it you have talked this matter over with him entirely?
"A.  Yes, sir.
"Q.  You are aware that you have been charged with the offense of sodomy?
"A.  Yes, sir.

\*　\*　\*　\*　\*

"Q.  Have there been any threats or promises made to you in order to induce this plea?
"A.  ,No, sir."

These statements appear to deny that the guilty plea was induced by false promises, but do not in terms deny that a confession was so induced, or that defendant apprehended that such a confession could be used against him if he pleaded not guilty.

very few people such as Mr. Pooley, who have come forth and admitted the circumstances surrounding their particular troubles, such as his."

The present record does not sufficiently support defendant's assertions as to the illegal procurement of a confession or as to his guilty plea being made because of a misapprehension that an illegally obtained confession could be used against him if he stood trial. See, State v. Linehan, *supra*. We feel that, consistent with our practice in Linehan and State v. Clifford, *supra*, this case should be remanded to the trial court.[2] Upon a motion to vacate the plea of guilty the trial court may consider defendant's claims that a confession was illegally obtained from him and that his plea of guilty was interposed only because of a justifiable belief that an illegally obtained confession could be used against him if he stood trial.

■ Defendant also claims that the trial court abused its discretion in sentencing him to prison rather than to a state hospital or to probation. The facts are as follows:

At the arraignment, after defendant pleaded guilty and was examined, the trial court ordered the commissioner of public welfare to make his investigation and report to the court pursuant to Minn. St. 246.43.[3]

---

[2] State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785, cited by the state, is dissimilar. Suffice it to say that in that case we were merely affirming the trial court's denial of defendant's motion to withdraw his guilty plea, made after defendant was accorded a hearing on said motion.

[3] Minn. St. 246.43 provides in part: "Subd. 2. If a person who is 21 years of age or older at the time of his apprehension is convicted of any sex crime other than those specified in subdivision 1, the court may commit him to the commissioner for such a presentence examination, if the commissioner certifies that he has adequate facilities for making such examination and is willing to accept such commitment. The court and all public officials shall make available to the commissioner upon his request all pertinent data in their possession in respect to the case.

* * * * *

"Subd. 4. Upon completion of the examination, but not later than 60 days after the date of the commitment order, a report of the results of the examination and the recommendations of the commissioner shall be sent to the court.

"Subd. 5. If it appears from such report that the commissioner does not

On October 7, 1965, the medical director of St. Peter State Hospital made a report on defendant to the commissioner of public welfare. The report was based, inter alia, upon an August 14, 1965, report from defendant's private psychiatrist to defendant's attorney.[4] It summarizes defendant's background, history, and certain test results, and concludes:

"Evaluation at this hospital results in conclusions which are not essentially different from those previously expressed by [defendant's psychiatrist] in his letter which has been made available to the Court. Mr. Pooley is not psychotic, and shows no evidence of any need for

recommend specialized treatment for his mental and physical aberrations, the court shall order the proper county authorities to bring him before the court at county expense and shall sentence him in the manner provided by law.

"Subd. 6. If it appears from said report that the commissioner recommends specialized treatment for his mental and physical aberrations, the court may either place him on probation with the requirement as a condition of such probation, that he receive outpatient treatment in such manner as the court shall prescribe, or commit him to the commissioner under this section."

[4] Defendant's private psychiatrist reported on defendant's background, test results, and case history, and stated, "I had a long interview with the stepson * * * and I could find no indication that he had been traumatized by this sexual activity." The report stated, inter alia, the following conclusions:

"2) The prognosis in cases such as this is generally unfavorable but many individuals do respond with prolonged and intensive re-education, rehabilitation, counseling, and psycho-therapy, which leads to a more mature emotional outlook and greater emotional stability.

*     *     *     *     *

"4) In this particular case, it is my feeling that Mr. Pooley would respond favorably to continued therapy. He has never been nor does he show any tendency to be hostile or aggressive, and he has never shown any indication of using force in obtaining a sexual goal. I feel that he would respond well with close supervision on probation. Since the original interview, Mr. Pooley's attitude has changed in many respects, and at the present time, particularly with the cooperation of his wife and understanding of his children who are familiar with the situation, I do not see that there is any contra-indication to his stepson being in the same home."

continued hospitalization. Although the indications for any possible psycho-therapy are minimal, there are some indications that Mr. Pooley has at least a limited motivation for psycho-therapy, in that he verbalizes some concern over his goals, his occupational needs, and shows a drive for approval, which might be expected to re-inforce his ability to co-operate with supervision. However, his tendency to manipulate his environment indicated that there would be a need for a strong control if he were to attempt psycho-therapy. Any psycho-therapy should be continuously evaluated by the therapist to determine whether the patient was actually continuing to show any motivation."

On October 15, 1965, the assistant attorney general for the Department of Public Welfare reported to the court that the commissioner of public welfare was in agreement with the St. Peter medical director, and did not recommend any specialized treatment for defendant.

The trial judge sentenced defendant to not more than 5 years' imprisonment.

The trial court recorded, inter alia, the following impressions:

"I do not feel probation presently is indicated in this matter. Defendant is not ready to be returned to his neighborhood and the same home where the instant victim resides. Moreover, I am not satisfied that present non-institutional supervision would provide Defendant with sufficient motivation actively to seek and pursue intensive psychiatric therapy.

"Perhaps, after a period of prison confinement, such motivation might attain sufficiency when accompanied by parole supervision and the threat of re-institutionalization to a person who has lived in a prison."

The trial court observed the requirements of § 246.43. Defendant's contention that the trial court should have construed the mental report as requiring specialized treatment, even though the commissioner refused to recommend such treatment, is without merit. It is sufficient to note that this contention overlooks the statements in the medical director's report that "indications for any possible psycho-therapy are minimal," that defendant had only "at least a limited motivation for psycho-

therapy," and that "there would be a need for a strong control if he were to attempt psycho-therapy."

Defendant attacks the wisdom of the trial judge's view that knowledge of the rigors of imprisonment can supply the necessary motivation to defendant for later persevering in psychiatric treatment. He asserts that imprisonment does not aid rehabilitation (see, Cantor, *Deviation and the Criminal Law*, 55 J. Crim. L., C. and P. S. 441, 449), but instead the conditions of prison life may make rehabilitation more difficult (see, Glueck, *An Evaluation of the Homosexual Offender*, 41 Minn. L. Rev. 187, 209). It also has been suggested that where a person has been committed to a mental institution for treatment, the government must give him treatment in order to be justified in confining him (see, Rouse v. Cameron, 125 App. D. C. 366, 373 F. [2d] 451, and authorities cited). But defendant here was not committed to a mental institution for treatment. He was imprisoned for a crime. And the legislature did not exceed constitutional limits in providing criminal punishment for sodomy.[5] The sentence of not more than 5 years is well within the 20-year maximum of Minn. St. 617.14. We hold that the sentence is not contrary to law. See, In re Jenison Contempt Proceedings, 265 Minn. 96, 120 N. W. (2d) 515, vacated and remanded on other grounds, 375 U. S. 14, 84 S. Ct. 63, 11 L. ed. (2d) 39, reversed on other grounds, 267 Minn. 136, 125 N. W. (2d) 588, 2 A. L. R. (3d) 1389.

This case is remanded for proceedings not inconsistent with this opinion. If a motion to withdraw the guilty plea and vacate the judgment of conviction is granted, our jurisdiction will automatically terminate. If such a motion is denied, further proceedings here will be possible, the appeal from the judgment of conviction having been perfected. See, State v. Clifford, *supra*.

Affirmed and remanded.

---

[5] Robinson v. California, 370 U. S. 660, 82 S. Ct. 1417, 8 L. ed. (2d) 758, cited by defendant, is distinguishable. That case held unconstitutional a statute making it criminal to be addicted to the use of narcotics, on the ground that making criminal the suffering of a disease was cruel and unusual punishment. The present statute does not make criminal homosexuality or any other disease, but merely proscribes the act of sodomy.