**STATE of Minnesota, Respondent,**

**v.**

**John Lewis ADAMS, Appellant.**

**No. 48819.**

Supreme Court of Minnesota.

June 27, 1980.

528

C. Paul Jones, Public Defender, and Gregory A. Gaut, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Asst. County Atty., Chief, App. Division, David W. Larson, Asst. County Atty. and Thomas A. Weist, Minneapolis, for respondent.

Heard before ROGOSHESKE, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Defendant John Lewis Adams appeals his conviction of murder in the third degree and his sentence as a dangerous offender pursuant to Minn.Stat. §§ 609.155 and 609.-16 (1978).

Defendant challenges his conviction on the grounds that his request for a lesser included offense instruction was denied and accomplice testimony was not sufficiently corroborated. Defendant challenges his

sentence as a dangerous offender on the ground that Minn.Stat. § 609.16 (1978) is unconstitutionally vague. He argues additionally that hearsay is inadmissible at such a sentencing hearing and that the trial court's findings of dangerousness and the necessity of extended imprisonment pursuant to Minn.Stat. § 609.16 (1978) are clearly erroneous. We affirm defendant's conviction and sentence.

Viewing the evidence in the light most favorable to the state, *State v. Hawkins*, 260 N.W.2d 150 (Minn.1977), the facts of this case are as follows. On June 30, 1977, Richard Prantner, a drug dealer, was shot and killed during the course of an attempted robbery. The attempted robbery occurred after a group including Patrick Staples, David Parent, Robert Adams, Carol Sue Morrow, and Duane Clark made several visits to the victim's apartment where they procured marijuana and LSD. After the second visit to the victim's apartment the group decided to rob the victim of his drugs. Because they needed a gun, Parent suggested involving Lenny Clyde White in the plan. White told the group he did not have a gun but knew where to procure one. The group, including White, proceeded to the apartment of Denise Bass, defendant's fiancee. White and Parent went inside to discuss the plan with defendant while the rest of the group, including Carol Sue Morrow, waited outside. When defendant, White and Parent emerged, defendant showed the group the gun.

Lenny White and defendant drove defendant's car to within a few blocks of the victim's apartment. Parent, Morrow, Rob Adams and Clark rode in a crew pickup truck and all but Morrow joined White and defendant in defendant's car to discuss the plan's details. Lenny White would drive defendant's getaway car. Rob Adams, Duane Clark and defendant would go upstairs and subdue the occupants of Prantner's apartment. The rest of the group would then go upstairs to locate and abscond with the drugs. After this discussion Staples and Parent got out of defendant's car and drove to within one-half block of Prantner's apartment. Pat Staples then got out of the truck and walked away.

Defendant, Rob Adams and Duane Clark went up the back stairs to the victim's apartment. Defendant crouched on the step below Clark and Adams. The victim's girlfriend answered the door. When she moved away to call Prantner, defendant moved up one stair with Rob Adams and Duane Clark to the side of him. The victim came to the door and defendant said either "give me your dope" or "hold it." Prantner moved toward the gun held by defendant and the gun fired hitting him in the chest. The three men ran down the back stairs through an alley and into an adjoining parking lot where Lenny White waited in defendant's car.

Defendant was arrested on August 17, 1977, and later charged with felony murder pursuant to Minn.Stat. § 609.195 (subd. 2) (1978). During the course of his trial, the trial court ruled that Duane Clark, Robert Adams, and David Parent were accomplices as a matter of law. He ruled that due to Carol Morrow's age, she was not an accomplice as a matter of law. She was 13 years of age at the time. Finally, he ruled that Patrick Staples' status as an accomplice was a question of fact within the province of the jury on the theory that by leaving the truck prior to the murder and going to the police on July 16, 1977, with a partial story of what occurred on June 30, 1977, he may have withdrawn from the conspiracy to rob the victim.

The jury found defendant guilty of felony murder on December 19, 1977. A sentencing hearing was held on January 16, 1978, for the purpose of determining whether defendant should be sentenced to a term of 40 years as a dangerous offender pursuant to Minn.Stat. §§ 609.155 and 609.16 (1978). The court received documentary evidence of three prior felony convictions; simple robbery, conspiracy to commit simple robbery and aggravated robbery. The court received into evidence various affidavits as well as the presentence investigation. Defendant objected to the admission of the affidavits as hearsay and as a viola-

tion of due process. Several police officers testified that defendant was a suspect in two uncharged robberies. Defendant objected to "some of the testimony" as hearsay and challenged the sentencing statute as void for vagueness.

The court found that defendant was convicted of one or more prior crimes as required by Minn.Stat. § 609.16 (subd. 3) (1978) and concluded he was predisposed to commit violent crimes and that an extended term of imprisonment was necessary for the public's safety. Defendant was sentenced to a 40-year term of imprisonment.

## I.

Defendant argues that the trial court erred when it denied his request for a lesser included offense instruction.[1] Murder in the third degree or felony murder is defined in Minn.Stat. § 609.195 (subd. 2) (1978) and provides:

Whoever, without intent to effect the death of any person, causes the death of another by either of the following means, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years:

· · · · ·

(2) Commits or attempts to commit a felony upon or affecting the person whose death was caused or another, except rape or sodomy with force or violence within the meaning of section 609.-185.

Defendant requested an instruction on first degree manslaughter which is defined in Minn.Stat. § 609.20 (subd. 2) (1978) as follows:

Whoever does any of the following is guilty of manslaughter in the first degree and may be sentenced to imprisonment for not more than 15 years or to payment of a fine of not more than $15,000, or both:

\* \* \* \* \* \*

(2) Causes the death of another in committing or attempting to commit a crime with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby; \* \* \*

Defendant argues that the evidence would reasonably have supported a conviction of manslaughter in the first degree. The state argues that a finding of not guilty of murder in the third degree was not justified by the evidence and the lesser included offense instruction was properly denied. *State v. Leinweber*, 303 Minn. 414, 422, 228 N.W.2d 120, 125–126 (1975). *See also State v. Jordan*, 272 Minn. 84, 136 N.W.2d 601 (1965). Defendant further contends that the legislature intended a lesser included offense instruction on first degree manslaughter be given where the defendant is charged with felony murder because the Advisory Committee Note to Minn.Stat. § 609.20 (subd. 2) (1978) states:

It will be noted that the term 'crime' is used in Clause (2) of § 609.20 rather than 'misdemeanor or gross misdemeanor.'

1. Although we do not decide the question of this case, it is not clear that manslaughter in the first degree, as defined by Minn.Stat. § 609.20 (subd. 2) (1978), is in all circumstances a lesser included offense of third degree murder, as defined by Minn.Stat. § 609.195 (subd. 2) (1978). Minn.Stat. § 609.04 (subd. 4) (1978) defines a lesser included offense as a crime necessarily proved if the crime charged were proved. We have adopted this approach. *See e. g., State v. Schmit*, 273 Minn. 78, 139 N.W.2d 800 (1966). Felony murder may be committed where death was neither an intended nor a foreseeable result in the commission of a felony against the person. "The effect of the clause is therefore restricted to those felonies committed upon or affecting the person whose

death was caused or another. For example, death resulting from the commission of a purely property crime would not fall within the clause." Advisory Committee Note, Minn.Stat. § 609.195 (1978). First degree manslaughter requires proof that death or great bodily harm was a reasonably foreseeable result of the commission or attempt to commit a crime. "The requirement has been added that the crime committed entails a foreseeable risk of death or harm. This is essentially a requirement of negligence. It is less than culpable negligence." Advisory Committee Note, Minn.Stat. § 609.20 (1978). Therefore, it is conceivable that in some circumstances proof of felony murder would not necessarily prove all elements of manslaughter in the first degree.

The intention is to permit the jury leeway to convict of manslaughter rather than murder in those cases where death is charged to have resulted from the commission of a felony under §§ 609.185 and 609.195.

Lesser included offense instructions should be given where "the evidence would reasonably support a conviction of the lesser degree and at the same time is such that a finding of not guilty of the greater offense would be justified." *State v. Leinweber*, 303 Minn. at 422, 228 N.W.2d at 125–26. We held in *State v. Briggs*, 256 N.W.2d 305 (Minn.1977) that while a defendant charged with four counts of attempted murder in the first degree was entitled to a lesser included offense instruction on aggravated assault, he was not entitled to an instruction on simple assault. In that case there was no rational basis for convicting defendant of the lesser offense and acquitting him of the greater offense. " * * * [I]f defendant was guilty of some form of attempting to inflict bodily harm, it was the more serious type, involving use of a dangerous weapon * * *." *Id.* at 305. Similarly, in *LaMere v. State*, 278 N.W.2d 552, 557–58 (Minn.1978) and *State v. Hofmaster*, 288 N.W.2d 218 (Minn.1979), we held that instructions on simple assault were not necessary where the offense charged was aggravated assault. If the defendants were guilty at all in those cases, they were guilty of the greater offenses because undisputed evidence indicated dangerous weapons were involved in the commission of the crimes.

In other words, the proof of the elements which differentiate the two crimes must be sufficiently in dispute so that a jury may consistently find the defendant innocent of the greater offense and guilty of the lesser offense. There must be some evidence justifying conviction of the lesser offense. *United States v. Nelson*, 563 F.2d 928, 930 (8th Cir. 1977).

The difficulty in this case is that a conviction of first degree manslaughter would clearly support a conviction for third degree murder. The United States Supreme Court and the Eighth Circuit Court of Appeals have held that where a conviction of a misdemeanor would support a conviction for a felony, a lesser offense instruction is not appropriate "for in the federal system it is not the function of the jury to set the penalty." *See United States v. Bishop*, 412 U.S. 346, 361, 93 S.Ct. 2008, 2018, 36 L.Ed.2d 941 (1973); *Berra v. United States*, 351 U.S. 131, 134–35, 76 S.Ct. 685, 687–688, 100 L.Ed. 1013 (1956). *United States v. Klugman*, 506 F.2d 1378, 1381 (8th Cir. 1974).

In *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the Court held that where a lesser offense is completely encompassed by the greater offense on the facts of the case, the lesser included offense instruction is not required because there is no rational basis on which the jury could convict of the lesser offense.

We believe that this case presents a situation analogous to that in *Sansone*. We perceive no rational basis on which a jury could find defendant not guilty of third degree murder. Armed robbery is undoubtedly a crime against the person within the meaning of Minn.Stat. § 609.195 (subd. 2) (1978). If an instruction on first degree manslaughter had been given in this case, we discern no criterion on which the jury could rely in determining which of the two offenses defendant committed. The two crimes, on the facts of this case, cover precisely the same alleged criminal act. A verdict should be based on the evidence rather than on sympathy for the accused. *State v. Dolliver*, 154 Minn. 297, 303, 191 N.W. 594, 596 (1923). Were the court to have submitted a first degree manslaughter instruction a jury would of necessity rely on sympathy in determining which of the two offenses was applicable.

The Advisory Committee note to Minn. Stat. § 609.195 (subd. 2) (1978) states the felony murder statute is "restricted to those felonies committed upon or affecting the person * * *." In *State v. Forsman*, 260 N.W.2d 160 (Minn.1977), we interpreted this phrase as insuring "that a conviction for third-degree murder will not result from a mere property offense." *Id.* at 164–65.

▇ In our view the legislature intended that first degree manslaughter, Minn.Stat. § 609.20 (subd. 2) (1978), be charged where the underlying crime is a misdemeanor or a crime against property and that it be instructed on as a lesser included offense where the facts of the case indicate that while the underlying crime is a felony, it may nevertheless be a crime against property rather than a felony against the person.[2]

▇ Where, as here, the underlying felony is a crime against the person, a lesser included offense instruction is not appropriate. A jury would have no rational basis on which to acquit on the greater and at the same time convict of the lesser offense.

## II.

▇ Defendant contends the trial court committed reversible error when it ruled that Pat Staples' status as an accomplice was a question of fact. He argues that Staples was an accomplice as a matter of law and that the jury could have used Staples' testimony as corroboration for the other accomplices' testimony. We find it unnecessary to resolve the question of Pat Staples' status as an accomplice because error, if any, is harmless beyond a reasonable doubt in light of sufficient corroborating evidence independent of Staples' and the other accomplices' testimony. Minn.R. Crim.P. 31.01; *see Tucker v. State*, 309 Minn. 482, 484 n. 2, 245 N.W.2d 199, 201 n. 2 (1976).

In reviewing the sufficiency of corroborating evidence of accomplices' testimony, we view the evidence in the light most favorable to the state and all conflicts in the evidence are resolved in favor of the verdict. There must be adequate corroboration from which a jury could find that the defendant committed the crime charged. *State v. Stave*, 280 Minn. 269, 158 N.W.2d 848 (1968).

▇ In Minnesota, the accused may not be convicted on the uncorroborated testimony of an accomplice.[3] Corroborating evidence must link or connect the defendant to the crime. It is not necessary that it establish a prima facie case of the defendant's guilt. *State v. Cooper*, 296 Minn. 48, 206 N.W.2d 356 (1973). It must point to the defendant's guilt in some substantial degree. The quantum of corroborative evidence needed necessarily depends on the circumstances of each case. *State v. Mathiasen*, 267 Minn. 393, 127 N.W.2d 534 (1964). Corroborating evidence may be circumstantial or direct. *State v. Stave*, 280 Minn. 269, 158 N.W.2d 848 (1968).

▇ If the accused testified, the inadequacies and admissions in his testimony may be corroborative of the accomplice's testimony. Corroborating evidence may be secured from the defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed. *State v. Mathiasen*, 267 Minn. 393, 127 N.W.2d 534 (1964). The defendant's entire conduct may be looked to for corroborating circumstances. If his connection to the crime may be fairly inferred from those circumstances, the corroboration is sufficient. *State v. Rasmussen*, 241 Minn. 310, 63 N.W.2d 1 (1954).

▇ In this case defendant took the stand in his own defense. He admitted

---

2. Admittedly, the Advisory Committee note to Minn.Stat. § 609.20 (1978) could be read to reach a different construction. However, it is equally clear that the legislature is presumed not to intend absurd or unconstitutional statutory constructions. While we do not reach the question, we note that the equal protection clause forbids the legislature to enact criminal statutes prescribing different punishments for the same acts committed under the same circumstances by persons in like situations. *State v. Witt*, 310 Minn. 211, 215, 245 N.W.2d 612, 616 (1976); *State v. Dietz*, 264 Minn. 551, 558, 119 N.W.2d 833, 837 (1963).

3. Minn.Stat. § 634.04 (1978) provides: "A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

Lenny White and Dave Parent came to his fiancee's apartment around 5 p. m. on June 30, 1977. He testified that they told him about the robbery plan and their need to procure a gun. He admitted he had the opportunity to procure his fiancee's gun because he went into the bedroom where she usually kept the gun immediately before leaving with White and Parent.

Defendant testified that he and White went to Sam Barry's house and dropped Sam off at Frances' Barber Shop where Sam had an appointment. The owner of the shop, Bessie Williams, testified that her records for June 30, 1977, did not reflect an appointment for a Sam Barry.

Defendant described his appearance that day as wearing braids in his hair and a bandage on his left arm. The accomplices testified that the man who accompanied them to Prantner's apartment or the man who shot Prantner wore braids and a bandage on one arm. Several other witnesses described him in the same fashion.

Defendant admitted he and White were driving defendant's black on white 1967 Oldsmobile at least for a period of time after 5 p. m. on June 30, 1977. The accomplices testified White and defendant followed them in a black on white Oldsmobile or Buick to within a few blocks of Prantner's.

Carol Sue Morrow testified that while the group was at White's she heard White say he knew where to get a Saturday night special. She stated they went from White's to another address (Bass' apartment) and saw a black man with a bandage leave that apartment with White. She testified Adams, Clark and Staples then went over to

talk with him in his car. Several accomplices testified that at this point defendant showed them the gun. She testified Lenny White and defendant followed them over to near the victim's apartment and that she was then told that Adams and Clark would ride with "them black guys" from that point on.

James Mengelkoch testified he was in the alley near the back stairs to Prantner's apartment trying to start his red pickup when he saw a black male and two Indians with long hair, possibly females, run past him and jump into a black on white Oldsmobile driven by a second black male. This corroborates Pat Staples', Rob Adams' and Duane Clark's version of what occurred immediately following the shooting.

Finally, Denise Bass, defendant's fiancee, testified Lenny White came to her apartment with an American Indian to see defendant around 5 p. m. on June 30, 1977. She testified he returned to her apartment with Lenny White around 6 p. m. She identified Exhibit I as the gun she owned and which was seized in a search of her apartment. She testified she ordinarily kept it in her bedroom.

We conclude that the accomplices' and Pat Staples' testimony was adequately corroborated by independent testimony. Error, if any, in failing to instruct the jury that Pat Staples was an accomplice as a matter of law was harmless beyond a reasonable doubt.

### III.

Defendant raises three issues regarding the propriety of his sentence as a dangerous offender pursuant to Minn.Stat. § 609.155 [4] and § 609.16 [5] (1978).

---

4. The text of Minn.Stat. § 609.155 (1978) provides: Subdivision 1. Definition. "Extended term of imprisonment" means a term of imprisonment the maximum of which may be for the maximum term authorized by law for the crime for which the defendant is being sentenced multiplied by the number of his prior felony convictions, but not to exceed 40 years.

Subd. 2. When applicable. Whoever, having previously been convicted of one or more felonies, commits another felony other than murder in the first degree may upon conviction

thereof be sentenced to an extended term of imprisonment if:

(1) A presentence investigation and report has been made pursuant to section 609.115; and

(2) Findings are made by the court as required by section 609.16.

Subd. 3. Felony. For purpose of this section a felony shall be that as defined in section

### A.

Defendant argues initially that the admission of hearsay at a sentencing hearing pursuant to Minn.Stat. § 609.16 (1978) constitutes a denial of due process. He urges us to hold that the full panoply of due process protections apply at a sentencing hearing pursuant to § 609.16 including the rules of evidence employed in a trial. Defendant objects specifically to the introduction of five affidavits which tended to show that he was violent and uncooperative while on parole and probation. One affidavit stated that while defendant was out on parole he was charged with the robbery of a Holiday Gas Station. He also objects to three police officers' testimony. They testified as to defendant's suspected involvement in the Holiday robbery and in a Dairy Queen robbery.

Defendant cross-examined these witnesses and introduced four witnesses of his own. Defendant introduced hearsay in the form of oral testimony. No objections were made by the state. Defendant relies on *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). The *Specht* case held the Colorado sex offender statute violated the Due Process Clause. The statute did not require notice or the opportunity to be heard before an extended sentence

was imposed. *Id.* at 610, 87 S.Ct. at 1212. The Court did not address a hearsay issue. Defendant's reliance on this case is misplaced because he was afforded notice, an opportunity to be heard, and confrontation and cross-examination of witnesses.

 It is well recognized that a trial judge is not bound by the same rules of evidence in sentencing as in the trial in which a defendant is convicted. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). However, due process guarantees the defendant notice, an opportunity to be heard, confrontation and cross-examination of witnesses in extended sentence hearings. *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). Furthermore, the Due Process Clause insures that at a hearing where the death sentence might be imposed all information in the presentence investigation report (PSI) must be disclosed to the defendant in order to have an opportunity to deny or explain it. *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

In *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), some of the evidence relied on by the trial court in sentencing the appellant concerned uncharged burglaries and a PSI. *Id.* at 244, 69 S.Ct. at 1081.

609.02, subdivision 2, notwithstanding the provisions of section 609.13.

Subd. 4. Limitations. Subdivision 2 does not apply unless:

(1) The prior convictions occurred within ten years prior to the commission of the crime of which the defendant presently stands convicted; and

(2) The prior convictions occurred:

(a) In this state; or

(b) In another state and were for crimes which would have been felonies if they had been committed in this state; or

(c) In a federal court.

5. Minn.Stat. § 609.16 (1978) provides in full: A sentence to an extended term of imprisonment under section 609.155 shall not be imposed unless:

(1) At the instance of the prosecuting attorney or by order of the court on its own motion, written notice is served by the prosecuting attorney on the defendant or his attorney personally setting forth the prior convictions and advising the defendant that the court may sentence him to an extended term of imprisonment

for the crime of which he has been convicted and that he is entitled to be heard thereon if he denies such prior convictions or brings in issue any matter in the presentence report, and fixing a time not less than five days after service of such notice for such hearing and sentence.

(2) A summary hearing is thereafter held pursuant to such notice at which evidence for and against the imposition of a sentence for an extended term may be received and at which the defendant is entitled to be heard on the issues raised and to be represented by counsel.

(3) The court finds on the basis of such hearings, the defendant's admissions, the evidence at the trial and the presentence report:

(a) That the defendant was previously convicted of one or more of the crimes specified in section 609.155; and

(b) That the defendant is disposed to the commission of criminal acts of violence and that an extended term of imprisonment is required for his rehabilitation or for the public safety.

■ We hold ·that the introduction of hearsay evidence at a sentencing hearing pursuant to Minn.Stat. § 609.16 (1978) did not violate defendant's due process rights.

### B.

■ Defendant charges that Minn.Stat. § 609.16 (1978) is unconstitutionally vague. He contends that the language of the statute authorizing a trial judge to find "[that] the defendant is disposed to the commission of criminal acts of violence and that an extended term of imprisonment is required for his rehabilitation or for the public safety" permits the use of unfettered discretion rendering the statute standardless. Therefore, he argues that the language is too indefinite to inform persons of what conduct is subject to penalty.[6]

In *State v. Michaud*, 276 N.W.2d 73 (Minn.1979), this court held that the statutory language "disposed to the commission of criminal acts of violence" was not unconstitutionally vague as applied to the appellant in that case. We held that the appellant's prior convictions for burglaries, automobile theft, aggravated robbery and aggravated assault as well as the PSI established the necessary propensity toward violent crimes. *Id.* at 77.

This is an even stronger case for the application of the dangerous offender statute. Defendant was convicted of felony murder. His criminal record reveals an escalating pattern of violence. His prior felony convictions are simple robbery, conspiracy to commit simple robbery and aggravated robbery. We therefore conclude the statute is not unconstitutionally vague as applied to defendant.

### C.

Finally, defendant contends that the trial court's findings pursuant to Minn.Stat. § 609.16 (1978) are clearly erroneous. *State v. Michaud*, 276 N.W.2d at 76.

■ Before imposing an extended sentence, the trial judge must find, among other things, that the defendant is disposed to the commission of violent crimes and that extended imprisonment is necessary for rehabilitation or public safety by a fair preponderance of the evidence. *State v. Piri*, 295 Minn. 247, 204 N.W.2d 120 (1973).

· ■ Despite his protestations to the contrary, defendant did not challenge the PSI on hearsay or accuracy grounds. Absent a challenge to a PSI on grounds of accuracy, the fact of prior felony convictions as specified in Minn.Stat. § 609.155 (1978) and a PSI supporting a finding of dangerousness and the necessity of an extended term of imprisonment satisfies the state's burden by a fair preponderance of the evidence. *State v. Piri*, 295 Minn. 247, 204 N.W.2d 120 (1973).

In this case the trial judge stated that he was not impressed with the affidavits and that the uncharged robberies did not sway him. Instead the instant convictions and prior convictions "on the realm of violence" impressed him. He found that the PSI was unbiased and nonprejudicial.

We conclude that the trial court's findings pursuant to Minn.Stat. § 609.16 (1978) are not clearly erroneous.

Defendant's conviction and sentence are affirmed.

WAHL, Justice (dissenting).

I must respectfully dissent from the majority's holding that the trial court's refusal to given an instruction on first-degree manslaughter was proper. To justify the refusal of the trial court to give the requested instruction, the majority determines that the legislature intended that first-degree manslaughter be charged only where the underlying crime is a misdemeanor or a

---

**6.** Defendant cites *United States v. Duardi*, 384 F.Supp. 874 (W.D.Mo.1974), aff'd on other grounds, 529 F.2d 123 (8th Cir. 1975) the authority most on point in support of this argument. The district court held notice of the state's intention to invoke the federal dangerous offender statute to be faulty and alternatively found the statute to be void for vagueness. The Eighth Circuit affirmed on the ground notice of intent to invoke the statute was faulty and refused to reach the vagueness issue.

crime against property. The plain language of the statutes themselves belies this interpretation. The contrary intent of the legislature is also made clear by the Advisory Committee note to Minn.Stat. § 609.20, subd. 2, which reads as follows:

> It will be noted that the term "crime" is used in Clause (2) of § 609.20 rather than "misdemeanor or gross misdemeanor." The intention is to permit the jury leeway to convict of manslaughter rather than murder in those cases when death is charged to have resulted from the commission of a felony under §§ 609.185 and 609.195.

This court must give careful consideration to Advisory Committee Comments to the Criminal Code in ascertaining legislative intent when doubts exist as to the proper construction of a statute. *See State v. Johnson*, 273 Minn. 394, 399–400, 141 N.W.2d 517, 521–22 (1966). The Minnesota Jury Instruction Guide for criminal cases, prepared by the Minnesota District Judges Association, quotes the Advisory Committee note in its comment to CRIMJIG 11.18 on first-degree manslaughter and indicates that, since no standard is set forth in the statutes for differentiation, trial court judges should not attempt to differentiate them but should merely give the instructions for each crime. 10 Minn. Practice 100 (1977). By its interpretation, the majority creates a distinction between Minn.Stat. §§ 609.195(2) and 609.20(2) which the legislature expressly did not intend, and which is contrary to past practice since these statutes were enacted in 1963.

That neither statute delineates a criterion on which the jury could rely in determining whether the defendant had committed a felony against the person or a crime may be unwise; but where the legislative intent is clear, this court may not judge the wisdom of its enactments but must give effect to that legislative intention. Minn.Stat. § 645.16 (1978); *Hughes v. Patrick and Associates*, 300 Minn. 387, 220 N.W.2d 347 (1974).

*Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), on which the majority relies, is clearly distinguishable from this case. The *Sansone* court cited *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), as authority for its holding that a lesser included offense instruction is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. In *Berra*, the defendant, charged with a felony, requested an instruction on a lesser included misdemeanor. The facts necessary to prove both the felony and the misdemeanor were identical, so that if instruction on both crimes were given, the jury would be allowed to choose the crime and, therefore, the sentence which the defendant would receive. The Supreme Court decided that, since there was no statutory provision giving the jury the right to determine the punishment to be imposed after the determination of guilt, the lesser included offense instruction should not be given. 351 U.S. at 135, 76 S.Ct. at 688. *See Sansone*, 380 U.S. at 350 n. 6, 85 S.Ct. at 1009 n. 6. The instant case is distinguishable from *Sansone* and *Berra* because here the legislature has made a clear statement that both instructions are to be given.

Nor is our holding in *Leinweber* appropriately applied to this case, where the facts supporting a conviction for both crimes are virtually identical. The evidence reasonably supports a conviction of either crime. If it is true that there is no rational basis on which a jury could find defendant not guilty of third-degree murder, it is also true that there is no rational basis on which a jury could find defendant not guilty of first-degree manslaughter. *Leinweber* is not helpful in this kind of case.

Application of the familiar rule of construction that the legislature is presumed not to intend absurd or unconstitutional results is inappropriate. Where the legislative intent is not ambiguous, no presumptions need be applied. Furthermore, the constitutionality of the statutes was not challenged. That question must await a proper case for decision.

In the instant case, the evidence justified conviction of either offense, and the legislature intended that instructions on both offenses be given. Under these circumstances, failure to submit the instruction on first-degree manslaughter was error. Pursuant to Minn.R.Crim.P. 29.02, subd. 13, and Minn. Stat. § 611.02 (1978), I would reduce the defendant's conviction to first-degree manslaughter and remand for resentencing by the trial court.

ROGOSHESKE, Justice (dissenting).

I join the dissent of Justice Wahl.