**STATE of Minnesota, Respondent,**

v.

**Mary Beth SCHEU (C6–85–2161), Laurie A. Fitzgerald (CX–85–2163), Appellants.**

Nos. C6–85–2161, CX–85–2163.

Court of Appeals of Minnesota.

Aug. 26, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Anne E. Peek, Asst. Co. Atty., Minneapolis, for State.

Michael F. Cromett, St. Paul, for Mary Beth Scheu.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. State Public Defender, Minneapolis, for Laurie A. Fitzgerald.

Considered and decided by SEDGWICK, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Mary Beth Scheu and Laurie A. Fitzgerald appeal from convictions for presenting false claims to a public officer in violation of Minn.Stat. § 609.465 (1984), Minn.Stat. § 609.52, subd. 3(3)(d) (1984), and Minn. Stat. § 609.05 (1984), and for theft by swindle in violation of Minn.Stat. § 609.52, subds. 2(4), 3(1) (1984) and Minn.Stat. § 609.05. Appellants argue the evidence was insufficient to support the convictions and that the indictment was not specific enough to put them on notice of the charges against them and to enable them to prepare a defense. We affirm.

## FACTS

The City of Minneapolis contracted with Municipal and Private Services, Inc. (MAP-SI) to provide animal control services for the city. MAPSI also provided service for several metropolitan suburbs. During the relevant time period, from November 1982 through December 1983, appellant Laurie Fitzgerald managed MAPSI and appellant Mary Scheu, her sister, was the assistant manager. The contract called for eight animal wardens to patrol the city for eight hours each on weekdays, with one warden per truck. The city agreed to pay $19.09 per hour for this patrol service. The contract required the wardens to prepare daily logs indicating their work, location, and duties performed in half-hour increments. When the wardens returned to the kennel at the end of their shift, they presented their log sheets to the dispatcher. The dispatcher entered the driver, truck number, and the number of hours the driver worked on a face sheet. Face sheet figures were totaled at the end of the day. Monthly totals were then submitted to the city health department for payment.

Robert Sorman, animal control officer for the city, received copies of the wardens'

daily logs. He reviewed the logs and totaled the monthly amounts for billing purposes. The logs were then given to an accounting clerk who compared the logs with the bills submitted by MAPSI. The billing was adjusted, if necessary, to reflect the number of hours reported on the wardens' logs.

More than ten former MAPSI wardens testified that they had falsified daily logs in two major respects. First, they double billed the city by having two wardens ride together in the same truck yet complete logs as though each were in a separate vehicle. Second, they billed the city for suburban pick-ups. Several of the witnesses testified that both Laurie Fitzgerald and Mary Scheu ordered them to falsify the logs. Several drivers also testified that both appellants instructed them to bill the city even when the drivers ran personal errands for appellants, attended meetings, picked up another driver, or sat idle at the kennel or elsewhere. Witnesses also testified that they felt they had to comply with appellants' instructions in order to keep their jobs. Michelle Munkelwitz, a former receptionist and dispatcher for MAPSI, testified that she noticed drivers falsified their logs to show city patrol time during suburban pick-ups and that drivers rode together in the trucks.

In December 1983, two former MAPSI drivers reported these activities to Robert Sorman and to Lieutenant Roger Aronson of the Minneapolis Police Department. Lieutenant Aronson began investigating MAPSI by comparing the wardens' daily logs with the suburban pick-up slips. The comparison showed that some of the wardens actually were working in the suburbs when their logs indicated they were working in the city. Lieutenant Aronson also discovered from the logs that at times two drivers in the same truck filled out separate log sheets. Based upon the available records, the State introduced summaries of driver double billing and suburban pick-ups on city time. Lieutenant Aronson documented 330 hours of double billing and 56 instances of suburban work on city time.

Testimony also indicated that appellants failed to cooperate with the investigation. Lieutenant Aronson testified that Laurie Fitzgerald did not keep appointments and that Mary Scheu repeatedly claimed to be too busy to discuss the situation with him. Testimony also indicated that Laurie Fitzgerald told other witnesses not to cooperate with the investigation. The city did not renew its contract with MAPSI in February 1984, and the corporation relocated under the name Metropolitan Animal Patrol Services, Inc. When police executed a search warrant at the new location, Laurie Fitzgerald told them there were no old records there. Nevertheless, the officers found some relevant records. Many records that MAPSI was required to keep were missing, and a former driver, Raymond Pekkarainen, testified that he helped appellants burn a large quantity of records, including pick-up slips, dispatch cards, and drivers' logs.

Appellant Laurie Fitzgerald testified that she knew of some instances in which drivers falsified their logs. She denied ever ordering them to do so or that she threatened to fire drivers who did not cooperate. She testified that she required drivers to make up time when she was certain they had falsified their logs.

Appellant Mary Scheu similarly denied instructing drivers to falsify their logs. She also testified that she was unaware of the fraudulent practices, although she admitted she reviewed the daily logs and was aware of the procedures required under the contract. Although Mary Scheu also admitted that she, Laurie Fitzgerald, and Raymond Pekkarainen burned MAPSI records, she claimed they burned only stationery and client cards and did not burn drivers' logs or anything relevant to the police investigation.

Appellants, as well as two other individuals and the corporation, were indicted by a grand jury on January 10, 1985 for presenting false claims to a public officer and for theft by swindle in excess of $2,500. At the pretrial hearing, appellants moved to dismiss the indictments. The trial court denied the motions. In separate trials, the

court found each appellant guilty of both counts. Appellants received a stay of execution of sentence and five years of probation, some time in the Hennepin County Adult Detention Facility, and an order to pay $500 each in restitution.

## ISSUES

1. Did the trial court err by denying appellants' motions to dismiss the indictment?

2. Is the evidence sufficient to support appellants' convictions?

## ANALYSIS

1. Appellants argue that the indictment was not specific enough to put them on notice of the charges against them and to allow them to prepare a defense. Minn.R. Crim.P. 17.02, subd. 2 requires that an indictment contain "a written statement of the essential facts constituting the offense charged." The indictment must also cite the statute that the defendant allegedly violated. Minn.R.Crim.P. 17.02, subd. 3.

■ In this case, the indictment charged as follows:

COUNT I: PRESENTING FALSE CLAIMS TO PUBLIC OFFICER Minnesota Statutes § 609.52, Subd. 3(3)(d); § 609.05

That on or between November 12, 1982, and December 31, 1983, in Hennepin County, Minnesota, MUNICIPAL AND PRIVATE SERVICES, INC., also known as MAPSI, a Minnesota corporation, FRANK PUCCI, LAURIE FITZGER-ALD, MARY SCHEAU, and WENDELL WATSON, intentionally aiding, advising, hiring, counseling or conspiring with each other, with intent to defraud, presented to the City of Minneapolis claims or demands for allowance or payment knowing such claims or demands to be false in whole or in part, and such claims or demands were for an amount in excess of Two Thousand Five Hundred Dollars ($2,500.00);

COUNT II: THEFT BY SWINDLING OVER $2,500 Minnesota Statutes § 609.-52, Subd. 2(4), Subd. 3(1); § 609.05

That on or between November 12, 1982, and December 31, 1983, in Hennepin County, Minnesota, MUNICIPAL AND PRIVATE SERVICES, INC., also known as MAPSI, a Minnesota corporation, FRANK PUCCI, LAURIE FITZGER-ALD, MARY SCHEAU, and WENDELL WATSON, intentionally aiding, advising, hiring, counseling or conspiring with each other, obtained money of an amount in excess of Two Thousand, Five Hundred Dollars ($2,500.00), from the City of Minneapolis, by swindling, using artifice, trick, device or other means, to-wit: by falsifying logs, documents, records and billings and submitting them to the City of Minneapolis and obtaining payment for services not actually performed.

Appellants argue the indictment is defective because it does not specify which documents were falsified, how they were falsified, and on what dates they were falsified. They also claim the method of falsification and specific dollar amounts should have been made clear.

■ This court may reverse the convictions if the charge was so vague as to make it impossible for appellants to defend themselves. *See State v. Waukazo*, 269 N.W.2d 373, 375 (Minn.1978). Minn.R. Crim.P. 17.06, subd. 1 provides as follows:

No indictment, complaint or tab charge shall be dismissed nor shall the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matters of form which does not tend to prejudice the substantial rights of the defendant.

Appellants have failed to demonstrate any prejudice by the purported inadequacy of the indictment. The indictment sets forth the specific statutes violated, the acts constituting the violations, a specific time period, the venue, the value of the loss, the victim, the defendants, and allegations of conspiracy with respect to each count. Furthermore, the court granted appellants' motions for complete and detailed dis-

covery of the State's evidence. Appellants have not claimed that the State did not fully cooperate with the court's order. Therefore, we hold that appellants had adequate notice of the charges against them. *See State v. Becker*, 351 N.W.2d 923, 927 (Minn.1984).

We also reject appellants' claim that the indictment may place appellants in double jeopardy. The nature and elements of the offenses were clear from the indictment, and if there is a question about this in the future, appellants can rely on the trial records. *See Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).

Appellant Mary Scheu argues that we must dismiss the indictment against her for failure to establish probable cause that a crime was committed and that she committed it. *See* Minn.R.Crim.P. 18.06, subd. 2. We find sufficient evidence in the record to support the trial court's determination that the indictment was supported by probable cause to believe Mary Scheu committed the offenses. Numerous witnesses testified that they falsified their logs because Mary Scheu and/or Laurie Fitzgerald ordered them to do so. Mary Scheu acted as the assistant manager, supervisor, and dispatcher for MAPSI. A reading of the record leaves little doubt as to her significant involvement in the offenses committed.

2. Appellants next argue the evidence was insufficient to establish their guilt beyond a reasonable doubt. They claim the evidence consisted solely of accomplice testimony and that there was no independent corroboration of their involvement in the offenses. When reviewing a claim of insufficient evidence to support a conviction, the appellate court considers whether the trial judge, "giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty" of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978).

A defendant may not be convicted on the basis of an accomplice's testimony in the absence of corroborating evidence. Minn.Stat. § 634.04 (1984) provides as follows:

A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Although corroborating evidence need not establish a prima facie case of guilt, it must "link or connect the defendant with the crime." *State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980). The amount of corroboration that is necessary depends upon the circumstances of each case. *Id.* If the defendant testifies, any testimonial inadequacies or admissions may corroborate accomplice testimony. Furthermore, the defendant's conduct may be looked to for corroboration; the corroboration is sufficient if the defendant's connection to the crime may be fairly inferred from the circumstances. *Id.*

In reviewing accomplice testimony to determine the sufficiency of corroborative evidence, the appellate court must view the evidence in the light most favorable to the State and must resolve all inconsistencies in favor of the verdict. *State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980). Even assuming that the drivers who testified to falsifying logs were accomplices, we find sufficient corroborative evidence of appellants' guilt. Lieutenant Aronson's examination of the drivers' logs, pick-up sheets, and face sheets demonstrated that falsification occurred and that the falsified logs were submitted to the city for payment. MAPSI's former receptionist testified she noticed drivers falsified their logs. Appellants' conduct during the investigation was suspicious, and relevant records were destroyed or concealed.

In addition, appellants' positions in the corporation provided the opportunity for them to commit the crimes charged. Lau-

rie Fitzgerald admitted she knew drivers falsified logs. She testified she did the hiring, firing, and scheduling for the corporation, examined the logs on occasion, and did "just about everything." Mary Scheu, as the assistant manager of the corporation, was in charge of daily operations with Laurie Fitzgerald. As the primary dispatcher, Mary Scheu assigned the drivers to trucks, instructed them when to leave the city for a suburban pick-up, and kept track of the drivers' activities on the face sheets. She admitted she reviewed the logs at the end of the day and prepared the monthly bills for the city. We hold that the corroborating evidence sufficiently connected appellants to the crimes charged.

## DECISION

The trial court properly denied appellants' motions to dismiss the indictment, and the evidence is sufficient to support their convictions.

Affirmed.