*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0606**

State of Minnesota,
Respondent,

vs.

Bruce Everett Boyd,
Appellant.

**Filed March 21, 2016
Affirmed in part, reversed in part, and remanded
Hooten, Judge**

Todd County District Court
File No. 77-CR-14-856

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Charles G. Rasmussen, Todd County Attorney, Long Prairie, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Hooten, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

In a challenge to his convictions of theft of a motor vehicle and of theft, appellant claims that, because the state failed to present evidence corroborating his accomplice's

testimony, there is insufficient evidence to support the convictions and that the district court erred by entering convictions on all three counts, all of which arose from the same act of theft.  We affirm in part, reverse in part, and remand.

**FACTS**

The state charged appellant Bruce Everett Boyd with theft of property with a value exceeding $5,000, theft of a motor vehicle with a value exceeding $5,000, and theft of a motor vehicle in connection with the theft of an all-terrain vehicle (ATV).  The jury heard the following evidence at trial.

On August 23, 2014, K.S. was at Boyd's house with Boyd, N.G., and a friend.  At 9:15 p.m., K.S. let Boyd and N.G. use her car to drive to a liquor store to buy whiskey.  N.G. and Boyd drove K.S.'s car to the liquor store between 9:15 and 10:00 p.m. and bought a bottle of whiskey.  N.G. testified that after purchasing the whiskey, he and Boyd "drove around, just casing areas out" for approximately three to four hours to see if they could find things to steal.  They could not find anything to steal, so they decided to go to a potato farm where N.G. had seen an ATV a couple days earlier.  N.G. testified that he and Boyd first attempted to steal the ATV by pulling it with a jumper cable that they found in the back of K.S.'s car, but the cable broke when they tried to pull the ATV.  After pushing the ATV from behind to a location across the street, they found a light tan rope to tow the ATV with K.S.'s car.  N.G. testified that Boyd tied one end of the rope to the front of the ATV and the other end of the rope to the back of K.S.'s car.  N.G. testified that Boyd tied the knot of the rope because N.G. thought that Boyd "would tie a better, stronger knot."

2

N.G. testified that he and Boyd towed the ATV from the farm, with N.G. driving the car and Boyd sitting on the ATV. After driving approximately ten miles, they were observed on county road 30 by Todd County Sheriff Don Asmus. Sheriff Asmus testified that he was concerned that a car towing an occupied ATV with a rope at least 30 feet long, allowing the ATV to swing from left to right, created a dangerous situation. Sheriff Asmus activated his squad car's lights and attempted to pull them over, but N.G., trying to evade the squad car, accelerated and eventually drove into a cornfield. N.G. testified that after stopping in the cornfield, he and Boyd ran off in different directions. Sheriff Asmus waited for backup and then proceeded into the cornfield with another officer to search for the two suspects. The officers could not find the suspects, so they went back to the road to wait for additional officers. But, because of the severity of a storm that began during the course of the pursuit, the pursuit was called off.

P.A. testified that at approximately 8:30 or 9:00 a.m. on August 24, he picked up a hitchhiking man, who turned out to be Boyd, and that the man was "[a] little bit dirty" and "rough around the edges a little bit." After P.A. picked up Boyd, Todd County Sheriff's Deputy Lonnie Marcyes pulled over P.A.'s truck and discovered that Boyd was the passenger.

Deputy Marcyes testified that because he had received a call that a man had been seen walking along county road 30, he suspected, upon seeing P.A.'s truck, that P.A. had picked up the man. Deputy Marcyes testified that upon stopping the truck, he observed that Boyd was in wet clothing, had tears in his pant legs, and had scratches on his forehead, arms, and wrists.

N.G. gave a statement to police, claiming that a person named Shawn was involved in the theft. At trial, N.G. admitted that he lied to police. He testified that Shawn was a "made-up person" and that he falsely told police that Shawn was the driver so that N.G. would not get charged with fleeing a police officer. N.G. admitted at trial that he and Boyd stole the ATV.

Boyd testified in his own defense. Boyd testified that Shawn was a real person and claimed that he was with Shawn and N.G. that night. Boyd said that N.G. and Shawn dropped him off at a potato farm so that Boyd could siphon gas from a truck. Boyd testified that he "didn't know . . . nothing about the four-wheeler plan until after it was all going down." Boyd said that as he was siphoning gas, he saw two cars pull up in front of the potato farm, and he ran into the cornfield so that he would not get caught. Boyd stated that he got wet from the storm and that his clothes got dirty and torn from climbing onto an irrigator in the field. Boyd maintained that only N.G. and Shawn stole the ATV.

The jury found Boyd guilty of all three counts. The district court entered judgments of conviction on all three counts and sentenced Boyd to 26 months in prison on the count of theft of a motor vehicle with a value exceeding $5,000. This appeal follows.

**D E C I S I O N**

**I.**

Boyd argues that the evidence was insufficient to convict him because the state failed to present evidence corroborating his accomplice's testimony. Boyd acknowledges that the evidence establishes that N.G. and another person committed the theft, but alleges that the corroborating evidence is insufficient to prove that Boyd was the other person.

4

"This court reviews the sufficiency of evidence corroborating accomplice testimony in the light most favorable to the state, and all conflicts presented by the evidence are resolved in favor of the verdict." *State v. Her*, 668 N.W.2d 924, 927 (Minn. App. 2003), *review denied* (Minn. Dec. 16, 2003). A conviction cannot be based upon an accomplice's testimony "unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." Minn. Stat. § 634.04 (2014). "Corroborating evidence is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." *State v. Ford*, 539 N.W.2d 214, 225 (Minn. 1995) (quotation omitted). The Minnesota Supreme Court has explained the corroboration requirement as follows:

> Corroborating evidence must link or connect the defendant to the crime. It is not necessary that it establish a prima facie case of the defendant's guilt. It must point to the defendant's guilt in some substantial degree. The quantum of corroborative evidence needed necessarily depends on the circumstances of each case. Corroborating evidence may be circumstantial or direct.
>
> If the accused testified, the inadequacies and admissions in his testimony may be corroborative of the accomplice's testimony. Corroborating evidence may be secured from the defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed. The defendant's entire conduct may be looked to for corroborating circumstances. If his connection to the crime may be fairly inferred from those circumstances, the corroboration is sufficient.

*State v. Adams*, 295 N.W.2d 527, 533 (Minn. 1980) (citations omitted).

Here, there may be no direct evidence that corroborated N.G.'s testimony, but there is circumstantial evidence that did so. N.G.'s testimony that he and Boyd stole the ATV was corroborated by Boyd's admission that he was with N.G. that night and by Sheriff Asmus's testimony that he saw only two, not three, people towing the ATV. The fact that P.A. picked up Boyd along the same road where Sheriff Asmus saw two people towing the ATV also corroborated N.G.'s testimony because it is further evidence that Boyd was in the same vicinity on the morning after the theft. Deputy Marcyes' testimony that Boyd's clothing was wet and torn, and that he had scratches on his forehead, arms, and wrists, further corroborated N.G.'s testimony that he and Boyd fled into the cornfield during a storm after being pulled over.

Boyd himself corroborated N.G.'s testimony by the inconsistencies and admissions in his testimony. Boyd admitted that he was at the potato farm and that he fled into the cornfield. Although Boyd denied that he was involved in stealing the ATV, the jury evidently did not believe his story that he was at the potato farm solely to siphon gas from a truck. The jury apparently found N.G.'s testimony more credible, and we defer to the jury's judgment of credibility. *See State v. Pippitt*, 645 N.W.2d 87, 94 (Minn. 2002) ("[W]eighing the credibility of witnesses is a function exclusively for the jury."). Boyd's admission that he "didn't know . . . nothing about the four-wheeler plan until after it was all going down" established that, at least at some point, he was aware of the plan to steal the ATV. Boyd's own testimony therefore corroborated N.G.'s testimony by establishing his association with N.G. and his proximity to the place where the crime was committed.

6

Under these circumstances, where the jury could fairly infer Boyd's connection to the crime, the corroboration was sufficient.

## II.

Boyd argues, and the state concedes, that the district court erred by entering judgments of conviction on all three counts. "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2014). Whether an offense constitutes an included offense is a legal question, which we review de novo. *See State v. Cox*, 820 N.W.2d 540, 552 (Minn. 2012). "[S]ection 609.04 bars multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985). A jury's verdict of guilty is not, by itself, a conviction. *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007). "A conviction is defined as either a plea of guilty or a verdict or finding of guilty that is 'accepted and recorded by the court.'" *Id.* (quoting Minn. Stat. § 609.02, subd. 5 (2006)). When a defendant is convicted of multiple charges for the same act, the district court must adjudicate formally and impose a sentence on one count only. *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984). The other convictions should not be formally adjudicated. *Id.* "If the adjudicated conviction is later vacated for a reason not relevant to the remaining unadjudicated conviction(s), one of the remaining unadjudicated convictions can then be formally adjudicated and sentence imposed, with credit, of course, given for time already served on the vacated sentence." *Id.*

Here, the jury found Boyd guilty of three counts of theft for stealing the ATV. At sentencing, the district court stated, "I will accept and record the verdict of the jury on all

7

three counts.  I will enter judgment of conviction on all three counts."  The three counts against Boyd were each charged under different subdivisions of the same criminal statute, Minn. Stat. § 609.52 (2014).  Because these three charges arose from the same act, the district court erred by entering convictions on all three counts.  The district court should have convicted Boyd only of the charge upon which he was sentenced, theft of a motor vehicle with a value exceeding $5,000.  We reverse and remand for the district court to vacate Boyd's other convictions of theft.

**Affirmed in part, reversed in part, and remanded.**