STATE of Minnesota, Respondent,

v.

Clayton M. HARRIS, Appellant.

No. C6-81-1227.

Supreme Court of Minnesota.

May 20, 1983.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Alan Mitchell, County Atty., John E. DeSanto, Asst. County Atty., Duluth, for respondent.

KELLEY, Justice.

Defendant was found guilty by a district court jury of burglary and theft of over $2,500, Minn.Stat. §§ 609.05, 609.52, subds. 2(1), and 3(1), 609.58, subd. 2(2) (1982). The trial court sentenced defendant to 44 months in prison, which is the presumptive sentence for the burglary offense (a severity level VI offense) by a person with defendant's criminal history score (four). On this appeal from judgment of conviction, defendant contends that his convictions should be reversed outright on the ground that the evidence of his guilt was legally insufficient or that he should be given a

new trial because of prejudicial error occurring at his trial. Alleged trial errors include error in admitting evidence challenged on fourth amendment grounds, error in preventing defense counsel from commenting on the reasons for defendant's refusal to testify, error in responding to questions by jurors concerning the rereading or replaying of testimony, and error in granting defense counsel's request that the jurors be allowed to separate and go home during the overnight recess in deliberations. We affirm.

On March 24, 1981, a Duluth woman heard two burglars enter her house. She went outside and confronted an accomplice waiting in a van. She got a good look at him and at one of the two men who had entered the house. The three men then left, taking with them a number of items of jewelry.

On March 25 Hennepin County officers went to the Minneapolis house of Collin McDonald to execute a search warrant for evidence connecting him to an unrelated burglary. While standing in the yard, the officers saw McDonald's car approach. Defendant was driving the car and one Jeffrey Caldwell was in the front seat and McDonald in the back. Instead of stopping the car, defendant continued driving. Since the warrant also authorized the officers to search McDonald's person, the officers pursued and stopped the car. In open view they saw some marijuana on the front seat near where defendant had been seated and they saw a necklace, a bolt cutter, and other items in the back seat. They ordered the men to get out and put their hands on the top of the car, and they then began to "frisk" for weapons. As they were doing this, defendant furtively moved his left hand over and turned the ring on his right little finger so that the setting was not visible.

The officers seized that ring and another ring defendant was wearing and arrested him and the other two men. Caldwell gave a statement implicating defendant and McDonald in the Duluth burglary. Duluth authorities were notified, and on March 27

the couple who owned the burgled house came to Minneapolis. They identified the ring and other property as items taken in the burglary. The wife, who had gotten a good look at the faces of two of the three burglars, positively identified Caldwell and McDonald.

Caldwell later retracted the statement he gave police implicating defendant, but subsequently he retracted the retraction and he testified against defendant at trial.

1. Defendant's first contention is that the evidence of his guilt of the two offenses was legally insufficient. There is no merit to this contention.

2. Defendant's first contention in support of his claim that he should be given a new trial is that the trial court prejudicially erred in denying his motion to suppress the rings seized from him at the time of his arrest. Defendant argues that the arrest was an illegal arrest not based on probable cause and that the rings should have been suppressed as a fruit of that illegality. Alternatively, he argues that the rings were not subject to seizure because their incriminating nature was not apparent at the time they were seized.

The stop was clearly valid, as was the decision to order defendant and the others out for a protective weapons frisk. Defendant's furtive movement, when combined with all the other suspicious circumstances (including defendant's manner of driving the car, defendant's association with McDonald, the marijuana in the front seat, and the necklace and bolt cutter in the back seat), gave the officers probable cause to conclude that defendant was involved in thievery and that one and possibly both of the rings were stolen property. *State v. Walker,* 319 N.W.2d 414 (Minn.1982); *State v. Compton,* 293 N.W.2d 372 (Minn.1980); *State v. Neville,* 293 N.W.2d 37 (Minn.1980); *State v. Lee,* 302 Minn. 382, 225 N.W.2d 14 (1975); 1 W. LaFave, *Search and Seizure,* § 3.6(a), (c), and (d) (1978). The rings were independently seizable because of the probable cause, but they were also seizable as an incident of the arrest and subject to more intensive scrutiny later after the police

learned about the Duluth burglary from Caldwell. *See* 2 W. LaFave, *Search and Seizure,* § 5.2(j) (1978).

■ 3. Defendant's next argument is that the trial court prejudicially erred in interrupting defense counsel's closing argument and, out of the hearing of the jury, instructing him that the argument he was making with respect to defendant's failure to testify was improper. The argument that defense counsel was making was that the jurors should not hold defendant's failure to testify against defendant because it was he, defense counsel, who had advised defendant not to testify and that defendant was merely following his advice. Defendant had a privilege not to testify and he also had a right to (and did receive) an instruction cautioning the jury against drawing an adverse inference from his failure to testify. *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981). But defendant's attorney did not have a right to go beyond the record and refer to or argue from facts that were not in evidence. Standards Relating to Defense Functions § 7.9 (approved draft 1971). Accordingly, the trial court acted properly.

4. Defendant next argues that the trial court prejudicially erred in the manner in which the court responded to jurors' question during their deliberations. Early in their deliberations the jurors returned and asked the court for the police report of Caldwell's statement. The court told the jurors that it could not give them that report because it had not been received in evidence, but the court stated that it could have those parts of the report which had been read into evidence replayed for the jury. The court then asked some questions in an attempt to understand exactly what the jurors wanted. The foreman finally indicated that the jury wanted Caldwell's testimony reread. The court granted that request. Defendant now contends that the court also should have asked the jurors whether they also wanted to rehear the testimony of two other witnesses bearing on Caldwell's statement.

■ Although it does not appear that the trial court erred in the manner in which it handled the matter—see Minn.R.Crim.P. 26.03, subd. 19(2)—we need not actually decide the issue since there is nothing in the transcript to indicate that defendant's counsel objected to the manner in which the trial court responded to the request. Defendant therefore must be deemed to have forfeited his right to have the issue considered on appeal.

■ Defendant also argues that the trial court erred in the manner in which it responded to the request by the jurors to hear a specific part of the testimony that had previously been replayed to them. Defense counsel did object to the court's decision to play back just the part that the jurors requested. In our opinion, the court handled the matter properly.

5. Defendant's final contention is that the trial court erred in sending the jurors home for the night during their deliberations rather than in putting them up in a hotel.

Minn.Stat. § 631.09 (1982) provides:

After hearing the charge the jury may either decide in court, or retire for deliberation, if it shall not agree without retiring, one or more officers shall be sworn to take charge of it, and it shall be kept together in some private and convenient place, without food or drink except water, unless otherwise ordered by the court, and no person shall be permitted to speak to or communicate with it or any one of its number unless by order of court, nor listen to the deliberations: and it shall be returned into court when agreed, or when so ordered by the court. In case of mixed juries counties shall provide adequate, separate quarters for male and female jurors with proper accommodations and, in the event the county fails to provide proper accommodations, the court shall order the jurors kept in a suitable hotel for the night.

The cases dealing with the issue of whether or not jurors should be kept in a hotel rather than be sent home during an overnight recess in deliberations in a crimi-

nal case are annotated at 72 A.L.R.3d 248, 283–289 (1976).

We need not decide whether the trial court may, over defense objection, do as the trial court did here. In this case defendant's attorney not only did not object, he suggested the procedure which the trial court used. Accordingly, defendant must be deemed to have forfeited his right to have the issue considered on appeal.

Affirmed.