STATE of Minnesota, Respondent,

v.

Douglas A. RUPP and Rupp
Construction Company, Inc.,
Appellants.

No. C7–85–1939.

Court of Appeals of Minnesota.

Sept. 16, 1986.

Review Denied Nov. 17, 1986.

Theodore J. Collins, St. Paul, Paul M. Malone, Slayton, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Nancy J. Bode, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

On August 3, 1984, Rupp Construction Co., Inc. and Douglas Rupp were separately accused by a multi-county grand jury of conspiring to rig bids on a public road contract in violation of Minn.Stat. §§ 325D.53, subd. 1(2); 325D.56, subd. 2; and 609.05 (1984). After a jury trial in Nobles County, both Rupp and the corporation were found guilty. On appeal, they contend that: (1) the trial court abused its discretion by admitting *Spriegl* evidence of another bid rigging incident; (2) accomplice testimony was inadequately corroborated; (3) the trial court abused its discretion at sentencing; (4) the indictments were improper; and (5) other alleged errors prevented a fair trial. We affirm.

## FACTS

The indictments, which originally charged each appellant with one felony count, stated that:

On or about June 2, 1981, defendant, aiding, advising, counseling and conspiring with others, did willfully combine or conspire with other persons in the letting of a public contract, whereby the price quotation of a bid was fixed or controlled: to wit, [defendant] agreed with Hugo Schulz, Inc., and W. Hodgman & Sons, Inc., their officers and agents, to fix or control the price quotation of a bid for a highway construction project in the County of Nobles.

The indictments were later amended to charge the illegal agreements between appellants and each of the two other construction companies as two separate offenses.

At trial, the State presented accomplice testimony from admitted "bid-riggers" who had received immunity in exchange for their testimony against appellants and others. The State's main witness was Lyle Maschoff, an employee and part-owner of W. Hodgman & Sons, Inc. He testified that he talked with Douglas Rupp on the morning of June 2, 1981:

Well, the morning of the letting I had a phone call with Doug Rupp, he was asking me to submit a complimentary bid on the job and I hadn't looked at the job or anything, I had no time to work up a bid and he offered to give me totals that I could stay above and this I agreed to and we worked up just a quick bid by just throwing in unit prices that would come up to that total that I was given.

Mark Johnson, an estimator for W. Hodgman & Sons, prepared the bid at Maschoff's direction:

I was instructed to complete a bidding proposal for the project and to determine what figures, what unit prices to fill in the bid and to come up with the final figure exceeding $340,000.

Paul Smith, an estimator for Hugo Schulz, Inc., testified that appellant asked him to submit a high or "complimentary" bid on the Nobles County project:

[Appellant] called me up and he was wondering if he could have that job because he said he was out of work and he needed the project and I agreed. I said yeah, give me a number to bid at and I will throw a bid in.

To corroborate the accomplice testimony by Maschoff, Johnson, and Smith, the State introduced business records of the construction companies that bid on the Nobles County project and records of telephone calls made between those companies. The records for W. Hodgman & Sons' Nobles County bid consisted of just one worksheet, which contained the same figures as their final bid without any calculations showing how the figures were determined. Johnson, who prepared that worksheet, said he simply "roughed in" unit prices to come up with a bid over $340,000. Smith testified that Hugo Schulz, Inc. had no worksheets for their Nobles County bid. Smith said he prepared the bid and just made the figures "come out higher than what I was supposed to bid." Telephone records showed numerous calls between appellant and the three other bidders on the Nobles County project on and around June 2, 1981.

The State offered evidence of several other instances of alleged bid rigging by appellants as further corroboration. Defense counsel moved to dismiss the indictments, arguing that *Spreigl* evidence could not be used to corroborate accomplice testimony; that motion was denied. The trial court found the State had presented clear and convincing evidence appellants rigged the bidding on a Jackson County project in 1981.

Smith testified that appellant Rupp came to his office on the day of the Jackson County bid letting, gave him a quote on the gravel portion of that project, and signed a subcontract agreement. Smith knew Rupp was a bidder on the project, and assumed there was an "understanding" that Smith's employer, Hugo Schulz, Inc., would be the primary contractor and Rupp the subcontractor. Smith couldn't remember an ex-

press agreement that Hugo Schulz would win the bid, but said he "knew" that Rupp's bid would be higher. Dwight Herman, the Jackson County Engineer, testified that Hugo Schulz won the Jackson County project with a low bid of $439,-873.40; the bid submitted by appellants was $442,553.50.

The worksheets used by appellants in calculating their Jackson County bid were admitted into evidence. Eugene Bertram, an accountant employed by appellants, said the worksheet figures equal the amount of the subcontract appellants signed with Hugo Schulz. Appellants' bid on the gravel portion of the Jackson County project was $6,720 higher than either their worksheets or the subcontract price, and their overall bid was about $14,000 higher than the worksheet figures.

The jury found both Rupp and his construction company guilty as charged. At sentencing, the State moved for an upward dispositional departure, arguing that Rupp should go to prison. The trial court instead sentenced Rupp to a stayed term of a year and a day, conditioned on completing five years probation, serving sixty days in jail, and paying a total of $50,000 to two local schools to fund courses in business ethics. Rupp Construction, Inc. received a similar "fine."

### ISSUES

1. Did the trial court err by admitting evidence of another rigged bid?

2. Was accomplice testimony sufficiently corroborated?

3. Did the trial court abuse its discretion at sentencing?

4. Were the indictments proper in all respects?

5. Did other alleged errors deny appellants a fair trial?

### ANALYSIS

#### I.

■ The general rule is that " 'evidence which in any manner shows or tends to show that the accused has committed another crime independent of that for which he is on trial is inadmissible.' " *State v. Forsman*, 260 N.W.2d 160, 166 (Minn.1977) (quoting *State v. Dinneen*, 300 Minn. 354, 356, 200 N.W.2d 292, 294 (1974)). However, evidence of other crimes is admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Minn.R.Evid. 404(b). A trial court's admission of evidence of other crimes or bad acts will not be reversed unless an abuse of discretion is clearly shown. *State v. Doughman*, 384 N.W.2d 450, 454 (Minn.1986).

To prove another rigged bid the State offered testimony by Paul Smith, Schultz's estimator, bids submitted by Schultz and Rupp to Jackson County, the worksheets prepared by each company, and a subcontract agreement between the two companies. The unit prices on appellants' worksheet and the prices on the subcontract are identical, but appellants' own bid has inexplicably higher unit prices for the same items. Appellants' total bid was only a few thousand dollars above Hugo Schultz's bid. Smith's testimony explained the disparities in the documentary evidence as the result of an illegal agreement to control the Jackson County bid letting, to which he was a party.

■ We agree with the trial court that the State met its burden of establishing the other rigged bid by clear and convincing evidence:

In this case, [Smith] actually talked to the defendant and reported his understanding of the defendant's understanding and the documentary evidence fully supported and corroborated [Smith's] testimony.

While the court initially permitted this *Spriegl* evidence on the basis of an earlier statement by Smith that more definitely described the agreement than did his trial testimony, the trial court correctly observed that Smith's trial testimony and the documentary evidence sufficiently indicated an illegal bidding agreement.

■ Evidence of another rigged bid tended to show appellants' intent as well as a common scheme or plan, or "modis operandi," and was both relevant and material to the State's case, as well as highly probative. *See Doughman*, 384 N.W.2d at 454. We conclude the trial court's admission of evidence of another rigged bid was not an abuse of discretion.

## II.

■ Here appellants were charged with conspiring to fix or control the price of the public contract for a Nobles County highway project. *See* Minn.Stat. § 325D.53, subd. 1(2) (1984). While the testimony of Maschoff, Johnson, and Smith established the elements of that offense, the State had the additional burden of producing other evidence to corroborate their accomplice testimony. In Minnesota, a defendant may not be convicted upon the testimony of an accomplice unless:

> it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Minn.Stat. § 634.04 (1984). We cannot accept the State's suggestion that the "subtle nature" of antitrust cases necessitates a lowering of the corroboration requirement in section 634.04. *See State v. Mathiasen*, 267 Minn. 393, 399, 127 N.W.2d 534, 539 (1964) (if the statutory mandate for corroboration of accomplices is to be altered to facilitate convictions, the change should be made by the legislature, not the courts).

Corroborating evidence need not establish a prima facie case and " 'is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree.' " *State v. Jones*, 347 N.W.2d 796, 800 (Minn.1984) (quoting *State v. Houle*, 257 N.W.2d 320, 324 (Minn.1977)).

■ Here Maschoff and Smith testified that appellant Rupp called them and asked them to submit bids that would enable him to win the Nobles County project. Telephone records show three telephone calls from Rupp Construction Co. to W. Hodgman & Sons just before the bid letting on June 2, 1981 but no previous calls that year. Those records also show frequent calls between Rupp Construction Co. and the other bidders on the Nobles County project. The telephone records establish appellants had an opportunity to rig the bidding and constitute circumstantial evidence corroborative of the accomplice testimony. *See Hanson v. State*, 344 N.W.2d 420, 424 (Minn.Ct.App.1984); *see also State v. Armstrong*, 257 Minn. 295, 308–09, 101 N.W.2d 398, 407–08 (1960).

Maschoff and Johnson testified that if the bid submitted by W. Hodgman & Sons on the Nobles County project had been competitive rather than rigged, there would have been numerous worksheets in their records. The single worksheet drafted by Johnson is consistent with his testimony that he merely "roughed in" unit prices to stay above a figure supplied by appellants. Paul Smith said he drew up Hugo Schulz's bid without using a worksheet. The absence of worksheets is also circumstantial evidence that corroborates the accomplice testimony. *Id.*

The State points to evidence presented by the defense for further corroboration:

> If the accused testified, the inadequacies and admissions in his testimony may be corroborative of the accomplice's testimony. Corroborating evidence may be secured from the defendant's association with those involved in the crime in such a way as to suggest joint participation, as well as from the defendant's opportunity and motive to commit the crime * * *.

*State v. Adams*, 295 N.W.2d 527, 533 (Minn.1980) (citing *Mathiasen*, 267 Minn. at 398–99, 127 N.W.2d at 538). Appellant Rupp testified, admitted calling Maschoff and Smith, and claimed he called Maschoff to secure a subcontract quote and to offer to act as a subcontractor if W. Hodgman & Sons was the low bidder. But appellants' worksheets show they already had all the subcontracts needed to do the project. The

phone calls provided an opportunity for appellants to rig the bidding on the Nobles County project and suggest joint action with the accomplices. The inconsistencies between Rupp's testimony and the documentary evidence tend to corroborate his participation in an illegal agreement. *See Adams*, 295 N.W.2d at 533.

We have already held that evidence of appellants' bid rigging in Jackson County was properly admitted. While corroboration of accomplice testimony is not specifically listed as a permissible use for evidence of other crimes, that evidence may be used to show intent and a common scheme or plan. *See* Minn. R. Evid. 404(b). We need not decide whether a *Spriegl* offense proven only by the testimony of an accomplice may be used to satisfy the corroboration requirement of Minn.Stat. § 634.04. Here documentary evidence tended to show the *Spriegl* offense and corroborated the proof of a Nobles County offense.

We conclude that the record, when taken as a whole, contained sufficient corroborative evidence to satisfy the requirements of Minn.Stat. § 634.04.

### III.

■ Appellant Rupp next contends the trial court abused its discretion when it imposed a stayed sentence, placed him on five years probation, and ordered him to serve sixty days in jail and pay $50,000 in lieu of a fine. Appellant argues that this sentence was an upward departure from the Sentencing Guidelines and compares his sentence to those received by his accomplices.

Rupp was convicted of violating the Minnesota Antitrust Law of 1971, Minn.Stat. § 325D.53 (1984), which is a felony. *See* Minn.Stat. § 325D.56, subd. 2 (1984). The trial court assigned a severity level of four to that offense, which was omitted from the Offense Severity Reference Table of the Minnesota Sentencing Guidelines. *See* Minnesota Sentencing Guidelines, Comment II.A.06 (1986). With appellant's criminal history score of zero, the presumptive

sentence under the guidelines was a stayed sentence of one year and one day; up to one year in jail and other conditions of probation were also authorized. *See* Minnesota Sentencing Guidelines IV.

The trial court required appellant to serve sixty days in jail even though a maximum of one year was authorized. His fine was authorized by statute. *See* Minn.Stat. § 325D.56, subd. 2 (1984). Contrary to appellant's assertions, he received a presumptive sentence. Neither has appellant presented any reasons which would justify interference with a trial court's discretion to choose among alternative presumptive sentences. *See State v. Kindem*, 313 N.W.2d 6 (Minn.1981).

### IV.

■ Appellants next raise four challenges to the indictments. First, appellants contend they were improperly indicted because the multi-county grand jury lacked jurisdiction. This issue is resolved by reference to Minn.Stat. § 628.41, subd. 2 (1984), which provides in part:

> If subject matter of the grand jury inquiry concerns activity, events, or other matters in more than one county, a grand jury may be selected, in reasonable proportion, from the counties in which the activity, events, or other matters occurred.

*Id.* Here the multi-county grand jury was composed of persons residing in Blue Earth, Brown, Cottonwood, Faribault, Jackson, Lyon, Martin, Murray, Nicollet, Nobles, and Watonwan Counties. Appellants were indicted for conspiring with two other companies to rig the bidding on a highway project in Nobles County. Rupp Construction Co. is headquartered in Slayton, Minnesota, which is located in Murray County; W. Hodgman & Sons is located in Martin County; and Hugo Schulz is located in Jackson County. We agree with the trial court, which found appellants' contention that the multi-county grand jury lacked jurisdiction was "without merit."

■ Second, appellants contend that the Minnesota's restraint of trade law is unconstitutionally vague because it does not distinguish between illegal bid rigging and legal subcontract negotiations. There are no reported cases involving a constitutional challenge to Minn.Stat. § 325D.53, subd. 1(2) (1984), which prohibits every:

> contract, combination, or conspiracy between two or more persons whereby, in the letting of any public contract, (a) the price quotation of any bid is fixed or controlled * * *.

*Id.* We accept the State's suggestion that this language is much more specific than that of the Sherman Act, which makes illegal every "contract, combination * * * or conspiracy, in restraint of trade * * *." 15 U.S.C. § 1 (1982). The Sherman Act is not unconstitutionally vague. *See Nash v. United States,* 229 U.S. 373, 378, 33 S.Ct. 780, 782, 57 L.Ed. 1232 (1913).

■ Third, appellants contend prosecution was barred by the general three-year criminal statute of limitations. *See* Minn. Stat. § 628.26(e) (1984). The supreme court recently determined that all actions under the Minnesota Antitrust Law are governed by the four-year statute of limitations in Minn.Stat. § 325D.64 (1984). *See State v. DeWitt,* 389 N.W.2d 722 (Minn. 1986).

■ Fourth, appellants contend the indictments were not sufficiently specific. We disagree. The indictments clearly and distinctly recited the essential facts constituting the offense of bid rigging, specified the particular public contract, and named the other construction companies involved. Nothing more was required. *See* Minn. Stat. § 628.18(6) (1984); *see also* Minn.R. Crim.P. 17.02, subd. 2.

### V.

Finally, appellants contend they were denied a fair trial by numerous alleged errors. Most importantly, appellants contend the trial court committed "four reversible errors" that tainted the jury's deliberations. We have reviewed those portions of the transcript cited by appellants, but find no error that would justify reversal of the jury's verdicts.

■ The record shows the trial court properly intervened and ordered a recess. *See State v. Sanders,* 376 N.W.2d 196, 204 (Minn.1985). Discussion of arrangements for keeping the jury together overnight may have unnecessarily upset some jurors. Still, appellant Rupp knowingly consented to sending the jury home and has no right to raise this issue on appeal. *See* Minn.R.Crim.P. 26.03, subd. 5(1) (1986); *see also Sanders,* 376 N.W.2d at 204 (citing *State v. Harris,* 333 N.W.2d 873 (Minn.1983)). The jury returned the following morning and deliberated for over an hour before reaching a decision; appellants have not established that the jury was pressured into an ill-considered verdict. *See id.* We conclude appellants were not prejudiced by any perceived irregularity in the deliberations.

■ These additional contentions of appellants have been considered and found to be without substantial merit:

(a) We agree with the trial court that appellants were provided with complete discovery of "all records, statements and notes" known to be in the possession of the State. *See* Minn.R.Crim.P. 9.01, subd. 1(2).

(b) Witness interviews conducted by the State during a general investigation of bid rigging were proper and did not violate the subsequent sequestration order of the trial court.

(c) The inconsistencies in Maschoff's testimony did not amount to perjury. Those inconsistencies were fully explored by both parties and could not have adversely affected the jury's verdict. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

(d) Appellants' claims of prosecutorial misconduct are not supported by the record.

### DECISION

The admission of evidence that appellants rigged the bidding on another public

contract was not an abuse of discretion where there was clear and convincing testimonial and documentary evidence of that other crime. Accomplice testimony was sufficiently corroborated. Presumptive sentencing was not an abuse of discretion. Appellants were properly indicted and received a fair trial.

Affirmed.